## PERKINS v. THE STATE.

CRIMINAL LAW.—*Larceny.*—*Robbery.* — *False Pretences.* — *Money Paid to Avoid Arrest Threatened by One Falsely Personating Officer.*—On the trial of a defendant indicted for the larceny of certain bank-bills, the evidence on behalf of the State established, substantially, that the defendant had falsely represented to the prosecuting witness and another, that he was an officer

having a warrant for the arrest of the latter on a charge of passing coun-
terfeit money ; and that, to avoid threatened arrest and imprisonment, the
prosecuting witness voluntarily, as the surety, and at the request, of the al-
leged criminal, and on his promise to repay, executed a promissory note,
and paid the bank-bills in question, to the defendant.

*Held,* that, though the facts may constitute the crime of obtaining money,
etc., on false pretences, the defendant is not guilty of either larceny or
robbery.

From the Clinton Circuit Court.

*A. E. Paige, S. O. Bayless* and *J. U. Gorman,* for appel-
lant.

*T. W. Woollen,* Attorney General, and *W. R. Moore,*
Prosecuting Attorney, for the State.

WORDEN, C. J.—The appellant, Thomas Perkins, and one
Lewis C. Baum, were jointly indicted in the court below,
for the larceny of two bank-notes of the denominations and
values, respectively, of five and ten dollars, the property of
Joseph Mink.

The appellant was awarded a separate trial, upon which
he was convicted and sentenced to imprisonment in the
state-prison for the term of two years, a new trial having
been denied him.

The case is before us on the evidence, from which it ap-
pears that the following is the substance of the case made
by the State against the appellant :

Charles and Joseph Mink are brothers, living some seven
miles apart, in Clinton county. It is to be inferred, that, on
the 12th of November, 1878, Joseph Mink was in the town
of Frankfort. On the 13th of November, 1878, the appel-
lant and Baum drove to the residence of Charles, and the
appellant went to the field where Charles was at work,
leaving Baum sitting in the buggy. The appellant told
Charles that his name was Johnson, and that he had a writ
or warrant for his (Charles') arrest for passing a counterfeit
half-dollar at Frankfort, on the day before. Charles having
said that he had not been away from home for two weeks, the
appellant said that he, Charles, was not the man they want-

ed, and asked him if he had any brothers. Charles told him that he had a brother Joseph, and where he lived. The appellant said that Joseph had passed counterfeit money the day before, at Frankfort; and that he, the appellant, was going to arrest him for it. He asked Charles if he would become bail for Joseph to keep him from going to jail if the appellant arrested him. Charles said that he would. The appellant and Baum then started away, and went to the residence of Joseph Mink, where they found him at work in his field. The appellant told Joseph that he was an officer, and had a warrant to arrest him for passing counterfeit money at Frankfort, on the day before. Joseph said he had no money to go to Frankfort and settle it with. Appellant said he could settle it there, if he had any money. Joseph said he had no money. Appellant said Joseph could go with him to his brother Charles, who had money. Accordingly the three started in the buggy and went to Charles.' Upon arriving at Charles,' the appellant and Baum said that if they would make up $40 in money and a note for $75 with good security, that would settle it. Baum said that Perkins was an officer and could settle any thing in the United States. Perkins said that any arrangement Joseph could make with Baum would be all right. After talking awhile, it was finally agreed that Joseph should pay to the appellant fifteen dollars in money, and that he and Charles should execute to him a note for seventy-five dollars, to settle the matter. This was accordingly done. The note was executed and the money paid. Joseph did not have the money, but Charles paid it to the appellant for him, to be afterward repaid by Joseph to Charles. The money was paid, and the note given, in order to prevent the arrest of Joseph and his being sent to jail. The money paid was a five and a ten dollar bill.

There was no pretence that the supposed counterfeit money had been passed to either the appellant or Baum;

but that the appellant was an officer having a warrant for the arrest of Joseph for passing the counterfeit money. Neither before nor at the time the money was paid and the note given, was there any menace or personal violence attempted, offered or threatened upon either of the Minks, by either the appellant or Baum. The only threat that was made was that they would take Joseph to jail, and that he would go to the penitentiary unless the matter was fixed up. Neither of the Minks was afraid, except that Joseph would be taken off and put in jail. The money was paid and the note given voluntarily, for the purpose of vesting the right and title thereto in the appellant, in order to secure to Joseph immunity from arrest and imprisonment. The money was paid, and the note given, without any expectation that either would be returned.

These are the material facts, stated as strongly in favor of the State as the evidence will warrant.

The question arises whether larceny can be predicated of the facts above stated. We are of opinion that it can not. It is clear, we think, that no robbery was perpetrated, in which might be included the crime of larceny.

The case is much like the one noticed in Bicknell Crim. Prac., p. 320, as follows : "Where a party was threatened, at a mock auction, to be sent to prison unless she would pay for an article knocked down to her, but for which she had not bid, and a pretended constable was called in, who told her she must go with him or give him a shilling, and she gave him the shilling, not from any apprehension of personal danger, but for fear of being taken to prison—the court held that this was not robbery, but extortion by duress. 2 East's P. C. 732."

It is doubtless true in many cases, that, where a party obtains possession of property from the owner, with his consent, by a fraudulent trick or device, with the felonious intent to deprive the owner thereof, he may be guilty of larceny. *Huber* v. *The State*, 57 Ind. 341.

But, so far as we are advised, this has never been held to be the case where the owner voluntarily parts with the possession, for the purpose and with the intention of parting with the title, without any expectation of its being returned, though he may have been induced thereto by the fraud of the person to whom the possession and title have been transferred. *Welsh* v. *The People*, 17 Ill. 339 ; *Stinson* v. *The People*, 43 Ill. 397 ; *Commonwealth* v. *Wilde*, 5 Gray, 83.

If the appellant is guilty of any offence, assuming that he was not an officer and had no warrant for the arrest of Joseph Mink, and it would seem that he may be, it is that of obtaining the money and note by means of the false pretence that he was such officer and had such warrant. 2 R. S. 1876, p. 436, sec. 27. But, on the facts shown, he is not guilty of larceny. *Williams* v. *The State*, 49 Ind. 367 ; *Jones* v. *The State*, 59 Ind. 229.

The judgment below is reversed, and the cause remanded.

The clerk will give notice for a return of the prisoner to abide the order of the court below.