## MACLIN v. THE STATE.

1. CRIMINAL PRACTICE: *Impannelling a jury. Discretion of judge.*
   The presiding judge at a criminal trial must of necessity have a large measure of judicial discretion in passing upon the qualifications of jurors, and the erroneous rejection of one summoned as a juror affords no sufficient ground for a new trial.

2. CRIMINAL PRACTICE: *New Trial: Separation of jury.*
   The separation of a juror from his fellows pending the trial, casts upon the State the burden of proving that no improper influence was brought to bear upon the juror during his absence. In other words, the mere fact that a juror separates from his fellows without the order of the court, is *prima facie* ground for a new trial, unless it affirmatively appears that the separating juror was not subject to any noxious influence during his absence.

3. EVIDENCE: *Of defendant's good character.*
   In prosecutions for homicide on circumstantial evidence, the good moral character of the defendant is admissible as evidence in his behalf; but the court cannot instruct the jury as to the weight to be given to such evidence.

APPEAL from *Chicot* Circuit Court.
Hon. J. M. BRADLEY, Circuit Judge.

*Mark Valentine* and *C. H. Carlton* for appellant.
Proof of good character as a man of peace, creates a reasonable doubt of guilt. The court erred in refusing the eleventh instruction for defendant. *28 Ark., 164; Carlton on Homicide, 311; Burrell on Cir. Ev., 531.*

When a witness for the State is recalled, defendant has the right to cross-examine on the whole case.  *Gr. Ev.*, *sec. 447.*

The testimony of Hughes should have been excluded, the survey not having been made as required by law. *Gantt's Digest, p. 287.*

The whole skeleton should have been introduced or accounted for.   The part not introduced might show injuries which would totally negative the guilt of accused.

Nothing was shown on the examination on *voir dire* of jurors Lee and Lawson, which warranted the court in excusing them, and it was error to excuse them for causes known only to the court.

The separation of the juror Johnson from his fellows, without the consent of the court, vitiated the verdict, unless the State had shown, which she did not, affirmatively, that he was not tampered with.  *10 Yerg., 241; 9 Sm. & M., 465; 12 Ark., 810; 13 Ib., 320; 20 Ib., 46, 60; 29 Ark., 255; 13 Texas, 168, 181, 182; 26 Miss., 78; 2 Swan Tenn., 378.*

Review the testimony in detail, and contend that the verdict was contrary to the law and the evidence.

*Dan. W. Jones*, Attorney General, for the State.

The eleventh instruction properly overruled.  (*28 Ark., 164; 34 Ib., 740.*)   The court did allow evidence of the good character of defendant to go to the jury, but properly refused to charge them as to the weight or degree of credit to be attached to it.

Hughes' evidence properly admitted.   It related only to a question of jurisdiction and appellant did not dispute the jurisdiction of the court.

It was not necessary to produce the entire skeleton, for the object was to show that deceased came to his death

by violence, and those parts which indicated this were shown.

Defendant had no right to any particular juror. *35 Ark., 639, 640 ; 29 Ib., 21.*

The separation of the juror Johnson was not hurtful to appellant, nor ground for new trial. *29 Ark., 253; 35 Ib., 118, 220 ; 40 Ib., 463.*

SMITH, J. Maclin was convicted of murder in the first degree, upon an indictment which charged him with the willful, malicious, deliberate and premeditated killing of one Griffin.

In impannelling the petit jury, two persons who had been summoned on the regular panel, were excused by the court, and exceptions were reserved. They stated upon their *voir dire* that they had heard a portion of the testimony on a previous application of the prisoner for bail, but that such testimony had left no permanent impression on their minds. In explanation of their rejection as jurors, the circuit judge has incorporated in the bill of exceptions a statement that it was officially known to him that one of these persons was bail for the appearance of the defendant, and that the other was under indictment for manslaughter, and that for these reasons, as well as their previous acquaintance with the facts of the case, he considered it improper for them to sit. *1. IMPANNELLING JURY.*

Without attaching any great importance to knowledge that was in the breast of the court and not developed in the examination, we remark that the presiding judge, who has an opportunity to observe the appearance and demeanor of jurors, must of necessity be invested with a large measure of judicial discretion in passing upon their qualifications. And the erroneous rejection of one who is *Discretion of judge.*

Maclin v. The State.

summoned for jury service lays no sufficient foundation for a new trial. *Hurley v. State, 29 Ark., 17; Benton v. State, 30 Ib., 343; Lavender v. Hudgens, 32 Ib., 763; Wright v. State, 35 Ib., 639.*

3. Separation of jury.    Several of the assignments in the motion for a new trial relate to alleged misconduct of members of the jury. Only five jurors were obtained out of the regular panel. These were sworn and duly admonished concerning their duties by the court, and it was ordered that they be kept together. One of these five, Frank Johnson, was granted permission to go to the house of Mr. William B. Street, who was sworn as a special bailiff to take charge of him. He slept for several nights in a house within Mr. Street's yard, but detached from the family residence, in company with Mr. Street's sons. Affidavits were made by Street and one of his sons, going to show that the juror who had been accepted by the parties and sworn, was not exposed to any improper influences by reason of this permission from the court. The same juror had also, before the trial began, visited one Gatewood at his room in the hotel; but he was accompanied by an officer, who heard all of the conversation and none of it had any relation to Maclin's trial.

Another juror was also permitted by the court to retire from the court room for a short time on account of indisposition and obedience to the calls of nature, leaving the rest of the jury in the box. But he was attended by an officer.

Furthermore, an affidavit was attached to the motion for new trial, that two of the jury, Ernest Daniels and Frank Johnson, did, during the progress of the cause, separate from their fellows and go, in the custody of an officer, into a saloon for the purpose of taking a drink of liquor. And that on another and different occasion the said Frank Johnson, during the trial of said cause, did, in the absence

of the remainder of the jury, go with an officer into a drinking saloon and remain there some time in the hearing of comments on the case that was on trial. The State filed a counter-affidavit of Daniels to the effect that, while he was in the saloon he heard no conversation by any one in reference to Maclin's case. But there is nothing in the bill of exceptions to rebut the presumption against the integrity of the verdict, raised by the affidavit in relation to Johnson's last visit to the saloon.

It is within the discretion of the Circuit Court to permit the separation of jurors who have been selected, while the trial panel is being made up. And no error is assignable for this cause, unless it be shown that injury has resulted to the prisoner. So for a necessary purpose, even while the trial is proceeding, a juror may be granted temporary leave of absence from his fellows and the court room, under the care of an officer. *Gantt's Digest, sections 1938, 1941; 1 Bishop Cr. Pro., 3d ed., sec. 994.*

But it has long been the rule of this court in case of felony, that the separation of a juror from his fellows pending the trial, casts upon the State the burden of showing that no improper influence was brought to bear upon the juror during his absence. In other words the mere fact that a juror separates from his fellows, without the order of court, is *prima facie* ground for a new trial, unless it affirmatively appears that the separating juror was not subjected to any noxious influence. The earliest case in our reports which we remember in which this rule was announced is *Cornelius v. State, 12 Ark., 782.* And it was followed in *Stanton v. State, 33 Ib., 317;* in *Collier v. State, 20 Ib., 36;* and *Coker v. State, Ib., 53;* in *Thompson v. State, 26 Ib., 323;* in *Kee v. State, 28 Ib., 155;* in *Wood v. State, 34 Ib., 341;* and in *Binns v. State, 35 Ib., 118.*

When ground for new trial.

Maclin v. The State.

The result of the cases is fairly stated by Mr. Justice Harrison in *Thompson v. State, supra*:

"The conclusion to be derived from the former decisions of this court, and which seems to be well supported by the authorities as to the consequences of the misconduct of the jury, in cases of mere exposure to improper influences, we understand to be this: Where evidence is adduced and shows that the jury were not in any way influenced, biased or prejudiced by the exposure, the verdict will not be disturbed; but unless it is proved that it failed of an effect, the presumption will be against the purity of the trial and the verdict will be set aside."

This seems to be the general rule where the separation has been without the consent of the court. See a great number of cases cited to this point in *20 Cent. Law Jour., 85;* though the Supreme Court of Pennsylvania, in the case of *Moss v. Commonwealth*, not yet reported in the regular series, take a distinction between capital and other felonies, in respect to the burden of proof, giving the prisoner the benefit of the rule only when he has been convicted of a capital crime.

Here no effort was made to deny, exculpate or explain the misconduct of this juror, or to show that it was not hurtful to the appellant, although it was in the power of the State to produce him and the officer, under whose eye he was, if the facts were otherwise than as stated in the affidavit. Nor can we presume, from the mere presence of the officer, that no harm could have resulted; for no presumptions can be indulged in favor of the conduct of an officer who has been guilty of so gross a breach of official duty as is here disclosed. Consequently it must be taken as an uncontroverted fact that the juror, Frank Johnson, without the sanction of the court, and in disregard of its admonition, did separate from his fellows, and in company

with an officer, enter a saloon, where he remained for some time within hearing of the conversation of persons who were discussing the case then on trial. This vitiates the verdict.

The court was moved to exclude from the jury the testimony of the county surveyor of Ashley County, who had surveyed the boundary line between Ashley and Chicot, after Griffin had been killed and in the absence of Maclin, apparently to enable himself to testify in which county the spot was where the dead body had been found. There was no error in admitting the testimony. Griffin was killed near the boundary of two counties. The objection, if it had any force, related to the jurisdiction of the court; and the appellant has not questioned that jurisdiction. His presence was not necessary to ascertain any fact connected with the killing, although it might indirectly affect him by determining in which county he should be tried.

A part of the skeleton of the dead man was exhibited to the jury, with a view to show the nature and location of the wounds. The appellant contends that the whole of it should have been produced. But it was proved by medical experts, who examined the body shortly after its discovery, that the bones exhibited were the only ones that were injured.

Upon the testimony contained in this record, we should not think of reversing the judgment of conviction. It was a case of circumstantial evidence. And it being the province of the jury to weigh the circumstances proved before them and to pass upon the guilt or innocence of the accused, their verdict should stand, unless some link in the chain of evidence tending to connect the defendant with the commission of the offense was entirely wanting. (*Harris v. The State, 31 Ark., 196.*) But as there must be a retrial, we refrain from comments on the testimony.

The appellant has no cause to complain of the charge of the court, which was unusually full and accurate. Ten special directions were given at the instance of the State. Exceptions were taken to but two of these; and these exceptions have been abandoned here. Twenty were moved on the part of the defendant, and only two were refused. Of the rejected prayers, counsel for appellant only insist upon this one:

3. Proof of good char-acter.

"If defendant be proved of good moral character as a man of peace, the law says that such good character may be sufficient to create a reasonable doubt of his guilt, although no such doubt would have existed but for such good character."

The court properly allowed Maclin to prove his character, and properly refused to instruct the jury what weight should be given to such evidence. Even before the adoption of the present Constitution, instructions as to the value or degree of credit to be attached to a particular species of evidence were erroneous. *Worthington v. Curd, 15 Ark., 492; Ingram v. Marshall, 23 Ib., 115; Jenkins v. Tobin, 31 Ib., 307; Thompson on Charging the Jury, section 57.*

And now judges are forbidden to charge juries with regard to matters of fact.

For the misconduct of the juror, Frank Johnson, the judgment is reversed and a new trial awarded.