## HALEY v. STATE.

1. CRIMINAL PLEADING : *Larceny included in robbery.*

An indictment for robbery which charges that the defendant "sundry bills of United States currency of the value of five hundred dollars, etc., of the money and personal property of one A. B., feloniously, violently, by force and intimidation, from the person and against the will of him the said A. B., then and there feloniously and violently did steal, take and carry away, against the peace," etc., embraces also the charge of larceny; and under *secs. 2288, 2289 of Mansf. Dig.*, on the trial of such an indictment the jury may find the defendant guilty of the lower offense of larceny, if they entertain a reasonable doubt as to which of the two offenses he is guilty.

| 49 | 147 |
|----|-----|
| 55 | 248 |
| 49 | 147 |
| 58 | 37 |
| 49 | 147 |
| 61 | 598 |
| 49 | 147 |
| 83 | 195 |

Haley v. State.

2. INSTRUCTIONS: *Error to point out inference, jury may draw.*

An instruction "that the long silence of A. B.," the prosecuting witness, "in announcing the alleged robbery, is a circumstance from which the jury may infer, in connection with the evidence, that the said A. B. was not deprived of his money through fear or violence," was properly refused. It is not the judge's duty to point out what inferences may or should be drawn from particular facts in proof; and to give such an instruction would be an invasion of the province of the jury.

3. SAME: *Payment of "hush money."*

Upon a trial for robbery under an indictment which included the charge of larceny, the question was whether the prosecuting witness had voluntarily paid the money obtained from him, to prevent a threatened exposure by the defendant, of crime, or whether it was extorted from him by putting him in fear of his life or great bodily injury; and the defendant having given evidence tending to prove that the money was voluntarily paid to him as hush money, requested the court to charge that if the jury should find that the prosecuting witness parted with his money to shield himself from a prosecution for arson, or to avoid a public charge of that character, this would not constitute larceny. But the court modified the instruction by adding the words "unless it was a contrivance resorted to by the defendants, to induce him by fraud to give up his money and in that way feloniously to steal the same." *Held:* That the defendant was entitled to an instruction in effect as requested, and that the qualification attached by the court was erroneous.

APPEAL from *Saline* Circuit Court.

J. B. WOOD, Judge.

*John McClure* for appellants.

1.  On an indictment for robbery, there can be no conviction of larceny. There can be no robbery *without violence*, and there can be no larceny *with it*. *12 Ga., 293.* Larceny is not a degree of robbery, nor are they of the same genus, and *secs. 2288–9, Mansf. Dig.,* do not apply. Robbery and larceny cannot be charged in the same indictment. See *33 Ark., 556; 3 Chitty Cr. Law, 806; Comyns Rep., 447; 2 Strange, 1014.*

2. Huff's long silence and failure to have appellants arrested, was a circumstance to be considered by the jury, and the court should have so charged. *Viners Ab., vol. 19, p. 249.*

3. The modification of the seventh instruction was error. If the parting with the money was *voluntary*, without force, fear or violence, there was no larceny, no matter how much *fraud* or *deception* was practiced. *26 Ohio St., 15; 9 Yager (Tenn.), 397.*

*Dan W. Jones,* Attorney-General, for appellee.

1. One indicted for robbery can be convicted of larceny, if there are apt words in the indictment. *Secs. 2288–9, Mansf. Dig.; Bish. Cr. Law, vol. 2, par. 1108; 33 Ark., 566.*

In this case the indictment for the higher offense or degree contains all the necessary substantive allegations to let in proof of the lower. *13 Ark., 712; 15 id., 204; 19 id., 205; 20 id., 64; 41 id., 359.*

2. Courts cannot charge the jury as to what weight is to be given to facts, and the court properly modified the sixth instruction.

3. The instructions fairly submitted the cause to the jury, and the judgment should be affirmed.

SMITH, J. The indictment charged that the defendants "sundry bills of United States currency of the aggregate value of $500, etc., of money and personal property of one Perry Huff, feloniously, violently, by force and intimidation, from the person and against the will of him the said Perry Huff, then and there feloniously and violently did steal, take and carry away, against the peace," etc.

The jury found the defendants guilty of grand larceny. Motions for a new trial and in arrest of judgment were refused;

and judgment of confinement in the penitentiary was pronounced against them.

The ground of the motion in arrest of judgment is: "Because the facts stated in the indictment do not constitute the crime of grand larceny."

At common law one indicted for robbery could not be convicted of larceny; as appears from *Rex v. Francis, 2 Strange, 1014,* which, after having been twice argued in the King's Bench, was finally heard before all the judges of England. In that case the defendants were indicted for robbery. The jury returned a special verdict, and the question arose thereon whether the facts found constituted robbery. Counsel for the defendants moved for a discharge of the prisoners, and the court said: "We all think this is grand larceny, and therefore cannot discharge these persons; *but as we cannot give judgment for a larceny, there must be a new indictment.*"

In the report of the same case in *2 Comyns, 478,* it was held that the prisoners ought not to be discharged out of custody, but remanded. "For though no robbery is found by the verdict, yet it appears they are guilty of grand larceny, for which no judgment can be given, *on this indictment,* for this differs from burglary and other cases where the prisoner may be acquitted of the burglary and found guilty of the felony; but here the offense is laid to be a robbery in taking *a persona,* the court cannot give judgment against them *on this indictment,* but must discharge them as to it, and remand them in order to be tried *upon a new indictment for the grand larceny.*"

Section 2288 of Mansfield's Digest declares that, "Upon an indictment for an offense consisting of different degrees, the defendant may be found guilty of any degree, not higher than that charged in the indictment, and may be found guilty of any offense included in that charged in the indictment."

Section 2289. "The offenses named in each of the subdi-

visions of this section shall be deemed degrees of the same offense in the meaning of the preceding section :

"1.   All offenses of homicide.

"2.   All the injuries to the person by maiming, wounding, beating and assaulting, whether maliciously, or from sudden passion, and whether attended or not with the intention to kill.

"3.   All offenses of larceny.

"4.   Arson and house burning.

"5.   Burglary and house breaking.

"6.   An offense and an attempt to commit the offense," etc.

The question then resolves itself to this: whether robbery is a degree or species of larceny, or includes it?

In *Clary v. State, 33 Ark., 561,* this court said:   "Perhaps, on a trial for robbery, if the State fails to prove that the goods were taken from the person of the party charged to have been injured, by putting him in fear, or by intimidation, or violence, and *proves* that the goods were taken from his person *furtively,* the accused might be convicted of larceny."

And in *Davis v. State, 45 Ark., 464,* it was declared that one accused of murder might be convicted of an assault with intent to kill, provided the indictment contained all the substantive allegations necessary to let in proof of the inferior crime.   If the allegations of violence and intimidation be stricken out of the present indictment, a charge of larceny will still be left.

Now, robbery is a compound, or aggravated larceny.   It is a stealing from a person with the element of assault, or putting in fear superadded. ·  Hence it is that an acquittal or conviction of either offense, bars a prosecution for the other.   This could only be upon the theory that larceny is included in robbery. Hence, also; under an indictment for the higher crime, the jury may find the defendant guilty of the lower, if they entertain a

1. CRIMINAL PLEADING:

Larceny included in robbery.

reasonable doubt as to which of the two offenses he is guilty. *1 Bish. Cr. Law*, 6th ed., secs. *553, 566, 791–2, 794–5, 1054–5; 2 id., secs. 892, 1158; People v. McGowan, 17 Wendell, 386; Hickey v. State, 23 Ind., 21; People v. Jones, 53 Cal., 58; State v. Jenkins, 36 Mo., 372; State v. Davidson, 38 id., 374; State v. Brannon, 55 id., 63; State v. Pitts, 57 id., 85; State v. Keeland, 2 S. W. Rep., 442.*

The parties indicted for the robbery were T. J. Haley, his wife and son. Perry Huff, the prosecuting witness, was a merchant of Hot Springs, and a believer in spiritualism. Mrs. Haley claimed to be a medium of communication with the world of spirits, cognizant of past events that had not fallen under her own observation and able to predict the future. Huff had been in the habit of consulting her about his business transactions, and having recently suffered some losses by fire, was anxious to know whether he was to get his insurance in full. Having invited her victim to a sitting at 10:30 a. m., the woman stationed her husband and step-son behind a curtain in the same apartment; and pretending to go off in a trance, she accused Huff of burning his house to defraud the insurance companies. About this time the two men walked from behind the curtain.

Huff testifies that they locked the door of the room; that the old man Haley and his son both had pistols; that they exhibited them to him and demanded his money, and told him he must give it up; that he was in fear of his life and great bodily injury, and under this fear he gave the defendants $500, and made his note, payable to Mrs. Haley, for $1500 more.

The three Haleys swear that Huff confessed to Mrs. Haley, acting as a spiritual medium, the burning of his houses on two different occasions; that old man Haley and his son heard the confession; that after the confession was made they confronted Huff; that Huff being aware they had heard his confes-

sion, to keep them from telling the public, and especially Huff's wife, finally agreed, and without any suggestion or demand on their part, to pay Mrs. Haley $500 in cash, and give his note for $1500, payable at a short time, as soon as he could sell some property.

Huff also swore that they detained him in the room for several hours, the two men standing on each side of him; and that after he had paid the money, they mesmerized or drugged or chloroformed him, so that he felt drowsy for three or four days; and that before he had fully recovered, the defendants had left town. Huff made no complaint to any officer, but laid his case before a lawyer, who advised him to be quiet until the defendants should return. In three or four months they came back to collect the note, when Huff caused them to be arrested. Mrs. Haley was acquitted, under the directions of the court, on account of the presence and presumed coercion of her husband.

The defendants requested the court to charge: "That the long silence of Perry Huff, from August 27, 1885, to December 9th of same year, in announcing the alleged robbery, is a circumstance from which the jury may infer, in connection with the evidence, that the said Huff was not deprived of his money through fear or violence."

2 INSTRUC-
TIONS:

Error to point
out inference
jury may draw.

This was properly refused. To give it would have been, under our system of practice, an invasion of the province of the jury. It is not the duty of the presiding Judge to point out what inferences may or should be drawn from particular facts in proof. *Randolph v. McCain, 34 Ark., 696; Flynn v. State, 43 id., 289; Maclin v. State, 44 id., 115; Polk v. State, 45 id., 165; Stevens v. Oppenheimer, id., 492.*

The jury were also told that: "If they believe, from the evidence, beyond a reasonable doubt, that the defendants, or either of them, feloniously took the property from the possession of the said Perry Huff, by stealth or fraud, with intent to

steal the same, then the jury may find the defendants, or either of them, that so took the money, guilty of larceny."

The court was further requested to charge, that if the jury should find Huff had parted with his money to shield himself from a prosecution for arson, or to avoid a public charge of that character, this would not constitute larceny. This prayer the court modified by adding the words, "unless it was a contrivance resorted to by the defendants to induce him by fraud to give up his money, and in that way feloniously to steal the same."

3. SAME: Larceny: Possession obtained by fraud.

In going out of its way to deal with the question of fraud and fraudulent devices, the court was treading upon dangerous ground. For some subtle distinctions have become firmly established in the law of larceny. Indeed, the whole law on this subject is extremely technical. Mr. Bishop, in his work on Criminal Law, volume 2, section 808, says: "If, by fraud, a person is induced to part with his goods, meaning to relinquish his property in them as well as his possession, he who thus obtains them may be chargeable with a cheat at the common law, or under the statutes against false pretences, but not with larceny; because, it is assumed, the owner, having actually consented to part with his ownership, there was no trespass in the taking."

In *Loomis v. People, 67 N. Y., 329*, this distinction is thus stated: "Where by fraud, conspiracy or artifice, the possession is obtained with a felonious design, and title still remains in the owner, larceny is established. Where title, as well as possession, is absolutely parted with, the crime is false pretences."

Compare *Wharton Cr. Law, 9th ed., secs. 964–5* and *Kellogg v. State, 26 Ohio St., 15.*

There is no evidence that the prisoner had obtained Huff's money by any trick. They obtained it, either by exciting his

Haley v. State.

fears or through his consent.   And there being nothing in the circumstances from which the jury could infer that the possession of the money was intrusted to them as bailees, or for a temporary purpose, the question was, not whether the money had been procured from the owner by false and fraudulent representations, but whether it had been obtained by his free consent, or extorted from his fears.   If the latter was the case, then the larceny was complete; the apparent consent being annulled by the fear which the thieves had inspired.   *2 Bishop Cr. Law, sec. 807.*

Such, however, is not the law when goods or money are acquired by fraudulent practices.   Consent, no matter how fraudulently obtained, if there be no mistake as to the taker or the thing taken, excludes the idea of trespass, and consequently the idea of larceny.   And no threats of prosecution, or fear of loss of reputation, will nullify such consent.   *2 Bishop Cr. Law, secs. 811, 1173; 1 Wharton Cr. Law, sec. 915; Perkins v. State, 65 Ind., 317.*

The defendants having given evidence tending to prove that the $500 was voluntarily paid by Huff, as hush-money, for the preservation of his secret and in order to prevent exposure, they had the right to have the jury instructed on this hypothesis. And the qualification attached by the court in relation to fraud was erroneous for two reasons: there was no testimony upon which to base it; and if there had been, it was not the law.

4. SAME: Same: Payment of "hush money."

Reversed and remanded with directions to put the defendants upon trial for larceny.