JONES *v.* STATE.

Opinion delivered July 21, 1894.

*Instruction—Error to assume facts.*

A charge, as to defendant's testimony, that "the false, improbable and contradictory statements of the accused, if made, in explaining suspicious circumstances against him, are evidences to be considered by the jury," is erroneous, as it assumes either that the statements of the accused were false, improbable and contradictory, or that there were suspicious circumstances against him.

Appeal from Logan Circuit Court.

JEPHTHA H. EVANS, Judge.

*E. Hiner* and *J. H. Carmichael* for appellant.

*James P. Clarke,* Attorney General, and *Chas. T. Coleman* for appellee.

HUGHES, J.   The appellant was convicted of murder in the first degree, and has appealed to this court. The evidence in the case was circumstantial. Charles Hibdon, the person alleged to have been murdered, his nephew, Jesse Hibdon, and the appellant, acting in the capacity of a cook for the Hibdons, on the 18th February, 1894, camped together in a house in Logan county, in this State, and, on the day following, the house in which they camped was burned, the Hibdons were missing, and the appellant was found in possession of their property, consisting of horses, a wagon, the gun of Charles Hibdon, the gloves and leather cuffs of Jesse Hibdon, and of Charles Hibdon's pocket book, and

various other articles of property identified by the evidence on the trial as the property of Charles and Jesse Hibdon. The night before the house burned, the reports of two gun-shots were heard in the direction of the house where they camped. In accounting for the disappearance of Charles and Jesse Hibdon, after the house had burned, the appellant first told that they had gone down into Scott county to see about trading some ponies; and he afterwards told that the Hibdons had fled, from fear of apprehension by the United States marshals, who were after them for selling whiskey in the Indian Territory, whence they came to Logan county to sell a drove of ponies, and where the appellant, who was a stranger there, engaged to accompany them as a cook. Burned bones supposed to be the bones of a human being were found in the ashes of the burned house and near it.

In the latter part of an instruction, numbered four, given to the jury by the court, the following language was used, to-wit: "The false, improbable and contradictory statements of the accused, if made, in explaining suspicious circumstances against him, are evidence to be considered by the jury, together with all the other facts and circumstances in evidence tending to show his guilt or innocence, giving to them all their due and natural weight, considered in the light of your observation of human actions, motives and affairs." This was excepted to by the appellant, and is urged here as error for which the judgment should be reversed. This instruction has been carefully and anxiously considered by the court, which has arrived at the conclusion that it assumes facts the existence of which should have been left to the determination of the jury upon the evidence. It appears to the court that it assumes either that the statements of the appellant were false, improbable and

contradictory, or that there were suspicious circumstances against him.

While we are assured of the fact, from the known integrity, impartiality and ability of the court that tried the cause, as well as from his statements to the jury on the trial, that it was not his province or intention to interfere with the right and duty of the jury to determine the facts, uninfluenced by the opinion of the court, if he had said anything from which it might be inferred that he had intimated an opinion in any way as to the guilt or innocence of the defendant, still we are of the opinion that the part of the instruction referred to is erroneous, and we think was probably calculated to mislead the jury, and work prejudice to the defendant.

It is the province of the jury, in a capital case especially, to determine all the facts, upon the evidence in the cause, and to determine the weight and credibility of the evidence. "The judge should always direct the attention of the jury to a hypothetical state of facts, which they may or may not find from the evidence to be true. He should never so frame his instructions as to assume a disputed state of facts as proven. The rule is of equal application in civil and criminal cases." 11 Am. & Eng. Enc. of Law, 254d, and cases cited. Thompson, Charging the Jury, sec. 47, and cases cited. In the case of *Thompson* v. *State*, 30 Ala. 28, which was for forgery, the court instructed the jury as follows: "That if they find, from the proof, that the name of William Nice was attached to the note when he received it, and that he received it from the prisoner, they may infer from this, if it is unexplained, and other circumstances in the cause, that the prisoner put the name of said Nice to said note"—to which charge the prisoner excepted. The Supreme Court of Alabama, in discussing this question, said: "But the defendant is entitled to a trial by jury. The determination of the facts

·which are essential to constitute his guilt must be left to the jury, and must not be assumed by the court. The *credibility* of the evidence must be left to the jury, and must not be assumed by the court. In the charge of the court excepted to by the defendant in this case, it is assumed that there were 'other circumstances in the cause.' The credibility of the evidence, tending to prove those 'other circumstances,' was not left to the jury. In thus assuming the existence of 'other circumstances,' without referring to the jury the credibility of the testimony by which they were assumed to be established, the court below erred."

So it appears to the court in this case that the circuit court erred in assuming that the statements of the accused were false, improbable and contradictory, or that there were "suspicious circumstances" against him, without referring to the jury the credibility of the testimony by which their existence was assumed to be established. In some of the other instructions given in the case, and insisted upon here as erroneous, there are expressions not to be approved, though probably not reversible error, as they were qualified and explained when given.

For the error indicated, in giving the latter part of instruction numbered four referred to, the judgment is reversed, and the cause is remanded for a new trial.

WOOD, J. I dissent. The majority, in my opinion, have put upon the instruction of the court a construction not warranted by any of the rules of grammar or punctuation. Of course, these should be observed. The part of the instruction under consideration, as it appears in the bill of exceptions, is as follows: "The false, improbable and contradictory statements of the accused, if made, in explaining suspicious circumstances against him are evidence to be considered," etc. It will be observed that there is a comma after *"accused"* and

"*made.*" This has the effect to make the "*if made*" a parenthetical clause. It was introduced into the sentence "obliquely," as the grammarians would say, to give some necessary information or explanation. It may be left out without destroying the grammatical construction. Leaving out the "*if made*," the sentence would read: "The false, improbable and contradictory statements of the accused in explaining suspicious circumstances against him are evidence to be considered," etc. The "if made" was obviously introduced for the purpose of having the jury determine whether the defendant made false, improbable and contradictory statements in explaining suspicious circumstances against him. The sentence is the same in meaning as if it read, the false, improbable and contradictory statements of the accused in explaining suspicious circumstances against him, if made, are evidence to be considered. The transposition does not alter the sense or grammatical relation of the words in the sentence; but it demonstrates clearly the true and only meaning to be as I have contended. It is improper for this court to separate the sentence into parts. It was given to the jury to be considered as a whole. The jury were not to find whether there were false, improbable and contradictory statements made, separate and apart from suspicious circumstances, or *vice versa*. But they were to find whether there were false and contradictory statements made in explaining suspicious circumstances. The "in explaining suspicious circumstances" part of the sentence was a necessary complement to the other. If there were no such statements made, there was nothing to be considered.

The presumption is, the lower court read, and required the attorneys to read and comment, in their argument, upon the instruction just as it appears in this record, observing the grammatical construction and the

effect of the punctuation, and also that the jury so read and understood it. I think it impossible, giving to the instruction a natural, unstrained and grammatical construction, that the jury should have been misled by the language employed. The court does not assume the existence of the facts, but leaves them to the jury to determine. Therefore, I do not differ with the court in the law announced, but deny its application to the instruction under consideration.

It is conceded in the opinion that this is the only error, and hence in my opinion the judgment should be affirmed.