HOGUE *v.* STATE.

Opinion delivered January 17, 1910.

1. HOMICIDE—INSTRUCTION—WEIGHT OF EVIDENCE.—An instruction in a murder case that if the jury "believe that the defendant was the last person ever seen with the deceased, and that he had never been seen

since that time, and that the defendant had failed to account for or explain his absence, *these are circumstances which tend to establish the defendant's guilt,* but are not alone sufficient to warrant a conviction," is not objectionable as a charge on the weight of the evidence, as to say that evidence tends to prove a charge is no more than to say that it is admissible for that purpose.   (Page 320.)

2.   INSTRUCTIONS—CONSTRUCTION AS A WHOLE.—While it is not a commendable practice in a criminal case to say that certain circumstances tend to prove the charge, the giving of such a charge is not prejudicial where the jury are directed "to consider all the facts and circumstances proved in the case, and that they must be consistent with each other and with the guilt of the defendant, and inconsistent with any reasonable theory of defendant's innocence."   (Page 322.)

3.   SAME—ASSUMPTION OF FACTS.—An instruction in a criminal case that "if you find from the testimony that the defendant has made false, improbable, inconsistent or contradictory statements in attempting to explain suspicious circumstances or appearances, then you may consider these matters in determining the guilt or innocence of the defendants" is not objectionable as assuming that there were suspicious circumstances or appearances.   (Page 323.)

4.   HOMICIDE—ABSENCE OF MOTIVE—INSTRUCTION.—It was not error, in a murder case, to refuse to charge that the absence of proof of a motive was a circumstance in favor of accused's innocence, as the State is not bound to prove a motive in order to establish the guilt of the accused, though the absence of a motive is a circumstance to be considered with other facts and circumstances in determining his guilt or innocence.   (Page 323.)

Appeal from Perry Circuit Court; *Guy Fulk,* Judge; affirmed.

Appellant, *pro se.*

1.   The court's charge to the jury on the question of the presumption of innocence was not full enough in that it did not instruct them that this presumption continues throughout the trial or until his guilt is established to the satisfaction of the jury beyond a reasonable doubt.   164 U. S. 492; 116 Ala. 445; 29 Fla. 527; 95 Neb. 1038; 96 N. W. 266; 55 Neb. 777; 9 Enc. of Ev. 923; 106 Cal. 104; 101 Wis. 627; 127 Ind. 419.

2.   The second instruction given over defendant's objection was in effect an expression of opinion on the weight of the evidence, and is clearly erroneous. 41 Ark. 343; 10 Ark. 138; 11 Ark. 830; 14 Ark. 63; 23 Ark. 32; 26 Ark. 362; 45 Ark. 165; 49 Ark. 439; 62 Ark. 543.   The jury are the exclusive judges as to whether the facts adduced in evidence tend to establish defendant's guilt.   34 Ark. 449; 54 Ark. 287; 55 Ark. 184; 57 Ark. 578.

It is further erroneous in that it singles out a certain portion of the testimony and calls especial attention to it. 141 Ill. 210; 105 Ill. 417; 92 Ill. 602; 99 Ill. 371; 10 Bush (Ky.) 495; 41 Tex. Cr. App. 252; 52 S. W. 417; 33 Pac. 791; 27 N. E. 710; 11 So. 915; 5 So. 167; 65 N. W. 213; 61 Neb. 584.

3. The seventh instruction given by the court assumes that there were suspicious circumstances, which was a question of fact for the jury to determine from the evidence. 62 Ark. 558.

4. The court erred in refusing to give the nineteenth instruction requested by the defendant on the question of motive. 34 Ark. 761; 44 Pa. 386; 17 Ala. 825; 103 Ala. 31; 33 La. Ann. 782; 10 N. Y. 13. The State's theory was that the motive leading to the murder was robbery. Hence the motive was of great, if not controlling, importance. 156 N. Y. 253; 49 N. Y. 137; 148 N. Y. 648.

*Hal L. Norwood,* Attorney General, and *C. A. Cunningham,* for appellee.

1. Appellant's rights were fully protected in the instructions given, when taken as a whole; hence there was no reversible error in the instruction given on the question of presumption of innocence. The jury as reasonable men necessarily understood that this presumption followed the defendant until his guilt was established by the evidence beyond a reasonable doubt. There is no error in refusing to give an instruction which is sufficiently embraced in other instructions given by the court. 87 Ark. 308; 86 Ark. 606; 74 Ark. 33; 72 Ark. 384; 53 Ark. 472; 54 Ark. 621; 52 Ark. 180; 37 Ark. 108; *Id.* 67; 34 Ark. 649; 15 Ark. 624.

The second instruction given is a correct declaration of law. 34 Ark. 754.

3. The jury were fully instructed that they were the exclusive judges of the evidence and of its weight and sufficiency. The seventh instruction is not open to the objection that it assumes that there were suspicious circumstances.

4. The court correctly refused to give the 19th instruction requested by appellant. 74 Ark. 418.

McCulloch, C. J. Defendant, Walter Hogue, was indicted by the grand jury of Perry County at the February term, 1909, for the crime of murder in the first degree, charging him with the

killing of Grover Misner in Perry County, on November 29, 1908. The case was tried at the August term, 1909, and he was convicted of murder in the first degree, as charged in the indictment. The testimony adduced by the State tended to establish the following state of facts:

Defendant lived in Scott County, Arkansas, and Misner lived in Crawford County with his mother, and he raised and gathered a crop of cotton that year. In the fall of the year defendant visited Crawford County, and while there he and Misner, who were both young men, planned to go on a hunting and trapping trip. They left home for that purpose early in November. Misner had just sold his crop, consisting of three bales of cotton, and had a considerable portion of the proceeds with him. Misner had a Winchester rifle, a watch and a suit case when they started on the trip.

The pair first went to Fort Smith, thence to Mansfield, where they remained a few days, thence to Ola, and from Ola they went down into the bottoms near a lake. Misner purchased a lot of traps and other supplies for the trip. They remained on this lake for a while, and then went to Aplin, in Perry County, and camped near a bridge on Fourche Bayou. On or about the 25th of November they moved their camp to a deserted cabin in the Fourche bottom, about two miles from Aplin. On Sunday, November 29, two of the witnesses, hearing gun or pistol shots down in the bottom, went to the cabin, and there found the defendant and Misner engaged in skinning a coon, which they claimed to have caught in a trap that morning. This was the last seen of Misner until his decomposed body was found in the cabin by two of the witnesses on January 21, 1909.

Very early on the morning of November 30, defendant was seen passing the house of a witness going toward Casa, Ark., and it was proved by another witness that he boarded a freight train at Casa that morning and paid his fare to Mansfield, exhibiting at the time a considerable roll of money. A witness who saw him at Mansfield about December 1 stated that he told him that he had got tired of trapping and had sold out to his partner, who had gone to Louisiana. He also stated to this witness that he had made about $80 trapping.

The body of Misner was discovered by Dr. Matthews and

a Mr. Wallace, who lived at Aplin, and, when passing the deserted cabin in the bottom, they were attracted by the odor which came 'from the inside, and on investigation found the decomposed body. The cabin door was fastened with a lock which Wallace had sold to defendant. The body was found in the corner of the cabin lying on some corn shucks, with a wagon sheet under and over it. The face was turned toward the wall, and there were three bullet holes in the back of the skull. There was a piece of cloth with Misner's name on it sewed on the inside of the hip pocket of the pantaloons, and there was a tablet lying near the body with Misner's name on it. His shoes were sitting near the body when found. Defendant had a white hat when he left on the trip, and Misner was wearing a black hat; but when defendant was seen going to Casa, he was wearing a black hat, and his own hat was in the cabin at the time Misner's body was found. A cuff button was found near defendant's cell in jail, which was identified as the property of Misner, and when arrested he had a watch which the testimony tended to identify as one owned by Misner. A number of contradictory statements. made by defendant was proved, as to what became of Misner and where he left him, and, among other things, ne stated to one witness that he had not been in Perry County. A fellow prisoner in jail testified that defendant confessed to him while in jail that he had killed Misner for his money. Taking all these facts and circumstances into consideration, there was abundant testimony to justify the finding of the jury that Misner came to his death at the hands of defendant, and that it was murder in the first degree.

The instructions given by the court were very full, and covered every phase of the case. Several were given at the instance of defendant's counsel, but many more requested by him were refused. Those refused related mainly to the question of reasonable doubt and presumption of innocence; but, as all of the refused instructions were substantially covered by others given, there was no error in refusing them. The instructions given and refused are too numerous to be copied here or discussed in detail.

The court gave, over defendant's objection, the following instruction, which is assigned as error: "2. You are instructed

that if you believe from the evidence in this case that the defendant was the last person ever seen with the deceased, and that he had never been seen since that time, and that the defendant had failed to account for or explain his absence, these are circumstances which tend to establish the defendant's guilt, but are not alone sufficient to warrant a conviction. It must also appear from the evidence that the deceased, Grover Misner, came to his death by the agency of the defendant."

The instruction is objected to on the ground that it is a charge on the weight of the evidence, and that it improperly singles out one circumstance and emphasizes it. This instruction is almost an exact copy of an instruction which was approved by this court in *Edmonds* v. *State*, 34 Ark. 720. The peculiar facts of the Edmonds case were such as to give greater force to the fact of the defendant having failed to account for or explain the disappearance of the deceased. But this difference relates merely to the weight to be given to the circumstance, and not to the correctness of the instruction. In that case the deceased was a woman whom defendant had brought from Kentucky, and with whom he was living in illicit relations when she disappeared. In the present case Misner was scarcely more than a mere boy, though only a few years younger than defendant, and they were both far from home, away from friends and acquaintances, living together in a deserted cabin in the woods. The peculiar circumstances surrounding their separation and the finding of the body of Misner in the deserted cabin after defendant had left it, if unexplained by defendant, tended with great force to establish his guilt.

It is insisted that the use of the words "circumstances which tend to establish the defendant's guilt" was an instruction on the weight of the evidence. We do not so construe the language. Trial judges should not admit proof of circumstances which do not tend to prove or disprove the charge, and the mere admission of the evidence is equivalent to a statement by the court that it tends in some degree to sustain the issue, though the weight to be given to it is left to the jury. Webster defines the word "tend" as "to move in a certain direction; to be directed, as to any end, object or purpose; to aim; to have or give leaning;

to exert activity; to influence; to serve as a means; to contribute." Now, to say that a thing tends or has a tendency to establish a certain state of facts is not a declaration as to the weight to be given to it, but is a mere statement that it is directed toward or moves in the direction of a certain result, the degree of its force not being mentioned. To say that a circumstance tends to prove the issue is no more than saying that it may be considered for the purpose of determining the issue.

This identical question has been passed on by the Supreme Court of Indiana in two cases, *Smith* v. *State,* 142 Ind. 288, and *White* v. *State,* 153 Ind. 689, and in both cases that court reached the same conclusion which we now announce.

In the last cited case the court said: "The statement that there has been evidence 'tending to show' a particular fact is equivalent to a statement that evidence has been offered relating to such fact. The force and effect of the evidence is in no sense suggested by the term. * * * The word 'tending' has not that elastic meaning attributed to it by the appellant's counsel, nor has it a signification in judicial proceedings different from its common and ordinary use. In its primary sense, it means direction or course towards any object, effect or result—drift. Webster's Int. Dict. 1484. And it must be presumed, in the absence of any showing to the contrary, that the jury understood the term in its usual and ordinary sense, and that it was not applied in any way harmful to appellant."

The other objection to the instruction is that it singles out this circumstance and unduly emphasizes it. The practice of framing separate instructions on distinct circumstances, and thus, as it is said, singling them out, is not commendable, and it has been held by this court in several decisions that it is not error to refuse such instructions. *Carpenter* v. *State,* 62 Ark. 286; *Ince* v. *State,* 77 Ark. 418. But the giving of such an instruction is not prejudicial error where the court in the whole charge directs the jury to consider all the facts and circumstances proved in the case, and especially where, as in this case, the court instructs that "the facts and circumstances in evidence shall be consistent with each other and with the guilt of the defendant, and inconsistent with any reasonable theory of defendant's innocence." As already stated, the charge of the court in this case was very full and com-

ARK.]                          HOGUE *v.* STATE.                          323

plete, and presented to the jury for their consideration every phase of the case; and when the charge is considered as a whole, it cannot be said that any single circumstance is emphasized.

Another instruction given by the court was objected to, on the alleged ground that it assumed that there were suspicious circumstances or appearances in the case for defendant to explain. This instruction is as follows:

"7. If you find from the testimony that the defendant has made false, improbable, inconsistent or contradictory statements in attempting to explain suspicious circumstances or appearances, then you may consider these matters in determining the guilt or innocence of the defendant."

We do not think that this instruction contains an assumption that there were suspicious circumstances or appearances. It leaves that question to be determined by the jury from the evidence.

Error is assigned in the refusal of the court to give the following instruction requested by defendant's counsel: "19. You are instructed if, upon a careful consideration of all the evidence in the case, you find that there is not shown a motive upon the part of the accused to commit the crime of which he is charged, this is a circumstance in favor of his innocence, which you consider together with all the other facts and circumstances in the case."

This instruction was properly refused. The State is not bound to prove a motive, in order to establish the guilt of the accused; and the fact that a motive is not shown is not a circumstance in favor of his innocence, though the absence of a motive is a circumstance to be considered with other facts and circumstances in determining his guilt or innocence.

After a careful consideration of the whole record, we are convinced that the defendant had a fair trial, and that the evidence abundantly establishes his guilt. The judgment is therefore affirmed.

BATTLE, J., (dissenting). The court erred in instructing the jury as follows:

"2. You are instructed that if you believe from the evidence in this case that the defendant was the last person ever seen with the deceased, and that he had never been seen since

that time, and that the defendant had failed to account for or explain his absence, these are circumstances which tend to establish the defendant's guilt, but are not alone sufficient to warrant a conviction. It must also appear from the evidence that the deceased, Grover Misner, came to his death by the agency of the defendant."

"5. If you find from the evidence that the defendant made any false statement as to the absence of Grover Misner, whom he is charged to have murdered, or what became of him, or any conflicting or unreasonable statements as to his whereabouts about the time the said Grover Misner was first missing, they may be considered by the jury as circumstances tending t˘ establish his guilt."

The Constitution of this State provides: "Judges shall not charge juries with regard to matters of fact, but shall declare the law." Art. 7, sec. 23. The judge should abstain from intimating an opinion to the jury as to any fact in evidence before them. *Sharp* v. *State,* 51 Ark. 147; *Felker* v. *State,* 54 Ark. 489; *Haley* v. *State,* 49 Ark. 147; *Jenkins* v. *Tobin,* 31 Ark. 306; *Shinn* v. *Tucker,* 37 Ark. 580; *Polk* v. *State,* 45 Ark. 165; *Reed* v. *State,* 54 Ark. 621; *Blankenship* v. *State,* 55 Ark. 244; *Railway Co.* v. *Byars,* 58 Ark. 108; *Jones* v. *State,* 59 Ark. 417; *Little Rock & F. S. Ry. Co.* v. *Trotter,* 37 Ark. 593; *Carpenter* v. *State,* 62 Ark. 286; *Redd* v. *State,* 63 Ark. 457; *Sullivan* v. *State,* 66 Ark. 506; *Bishop* v. *State,* 73 Ark. 568.

In the instructions copied in this opinion the court intimated an opinion as to the probative force of facts stated therein, which was contrary to the Constitution and prejudicial.