## NELON v. NELON.

### Opinion delivered June 21, 1926.

1. TRIAL—ADMONITION TO JURY.—While the circuit court may admonish jurors to give due consideration to the opinions of each other, to the end that they may reach an agreement, the court should not use language from which the jury may reasonably infer that the minority should yield to the majority.

2. TRIAL—LENGTHY CAUTIONARY INSTRUCTIONS.—The circuit judge should not give lengthy cautionary instructions, lest by inadvertence he should violate the rule against charging the jury upon matters of fact.

3. TRIAL—PROVINCE OF JURY—WEIGHT OF TESTIMONY.—The weight to be given to the opinions of experts is for the jury, and it would be error for the court to intimate that the testimony of experts would be entitled to greater weight than that of other witnesses.

4. Wills—competency of testator—jury question.—Whether a testator was mentally competent to make a will *held,* under conflicting evidence, to be a proper question for the jury.

Appeal from Lonoke Circuit Court; *George W. Clark,* Judge; affirmed.

### STATEMENT BY THE COURT.

Jewel Nelon, James Scott Nelon and Tillman Nelon filed for probate the last will and testament of J. R. Nelon, deceased. The probate of the will was contested by George Nelon. The will was duly admitted to probate, and George Nelon prosecuted an appeal to the circuit court. The cause was tried there upon a state of facts substantially as follows:

The will was written in proper form and duly executed and attested as required by our statutes. Under the terms of the will, George Nelon was given the sum of $5, and the remainder of the testator's property was devised to his wife, Ella Nelon, during her natural life, and, at her death, to his sons Jewel, James Scott and Tillman Nelon. The property devised consisted of 160 acres of farm land and some lots in the town of England. The will was executed on the 23d day of August, 1910, and J. R. Nelon died in 1920. James Scott and Tillman Nelon were the children of J. R. Nelon by Ellen Nelon, and Jewel and George Nelon were his children by a former wife.

According to the evidence for George Nelon, J. R. Nelon was suffering with rheumatism so badly that it had affected his mind, and that he was so completely under the control of his wife at the time he executed the will that he was mentally incompetent to make a will.

George Nelon testified that his father had conveyed to him and Cleve Cantrell in January, 1910, two hundred acres of land which had a mortgage on it for $1,500, which was about its value. The understanding was that Cantrell was to pay off the mortgage for a half interest in the land. George Nelon sold his interest in the land for something like $300.

According to the evidence adduced in favor of the proponents of the will, J. R. Nelon was an eccentric but strong-minded man,. and was in full possession of his mental faculties at the time he executed the will.  He was suffering with rheumatism, and continued to suffer with it until the date of his death, but his mental faculties were unimpaired.  George Nelon was only given $5 in the will because his father had already conveyed to him a half interest in two hundred acres of land in consideration that Cantrell should pay off a mortgage on it for $1,500.  According to their testimony, his interest in the land was worth considerably more than he sold it for.

The jury returned a verdict for the proponents of the will, and from the judgment rendered George Nelon has duly prosecuted an appeal to this court.

*Lee Miles*, for appellant.

*Williams & Holloway*, for appellee.

HART, J., (after stating the facts).   The first assignment of error is that the court erred in giving a cautionary instruction to the jury.   The record shows that the court instructed the jury, and fully and fairly submitted to it the respective theories of the proponents of the will and of the contestant.   The jury retired to consider its verdict, and subsequently returned into open court without a verdict, and the court gave it a very lengthy cautionary instruction.   The jury again retired to consider its verdict, and within a short time brought in a verdict in favor of the proponents of the will.   It is insisted that the jury arrived at its verdict because of the cautionary instruction given by the court.   On account of its length, we do not deem it necessary to set out this instruction in full in the opinion.   We deem it sufficient to say that we have considered it carefully, and do not think that it is open to the objection that it is argumentative and tends to single out certain portions of the evidence and give undue emphasis to them. This court has held that the circuit court, in its discretion, may admonish the jurors to give due consideration to the

opinions of each other, to the end that they may reach an agreement, but has said that it is prejudicial for the trial court to use language from which the jury may reasonably infer that the court intimates that the minority should yield its opinion to that of the majority. *St. L. I. M. & S. R. Co.* v. *Carter,* 111 Ark. 272, 164 S. W. 705; and *Stepp* v. *State,* 170 Ark. 1061, 282 S. W. 684.

In this connection, however, it may be stated that, under our Constitution, judges are not allowed to charge juries with regard to matters of fact, and should be very careful to abstain from intimating an opinion to the jury as to any fact in evidence in the case. On this account it is best that the circuit judge should not give a lengthy cautionary instruction, lest by inadvertence he should violate this rule.

A particular objection is made to that part of the cautionary instruction which is as follows:

"The evidence, it is true, comes from various different witnesses, and they have their peculiar views about the matter. With the exception of one witness, they were all laymen on the question of the capacity of the testator to make a will. Only one witness who could be classed as an expert, if an expert at all on mental diseases, pretended to give testimony."

Dr. N. B. Beakley was a witness for the proponents of the will, and testified that, in his opinion as a physician, having known the testator over a period of years, doing his practice and discussing business and social affairs with him, he considered him entirely normal mentally until a few months before he died. It will be remembered that the will was executed in 1910, and the testator did not die until 1920.

At the outset, it may be stated that the weight to be given to the opinions of witnesses testifying as experts is always a matter to be determined by the jury from all the circumstances appearing in evidence, and it would be error for the court to intimate to the jury that the testimony of medical experts would be entitled to greater weight than that of the other witnesses. *Jenkins* v.

*Tobin,* 31 Ark. 306; *Maclin* v. *State,* 44 Ark. 115; and *Hogue* v. *State,* 93 Ark. 316, 124 S. W. 783.

We do not think, however, that the part of the instruction quoted is fairly susceptible of the construction now placed upon it by counsel for the contestant. It in no sense tells the jury that greater force should be given to the testimony of the expert witness than to that of the other witnesses. It is true that Dr. Beakley was the only expert witness in the case, but all the other witnesses were permitted to state their opinions as to the mental capacity of the testator and to give their reasons for it. If counsel for the contestant thought that the language quoted might in any sense be construed as an intimation by the court that the testimony of the expert witness was entitled to more consideration than that of the other witnesses, a specific objection should have been made to it.

We have carefully considered the instructions as a whole, and they fully and fairly submitted to the jury the disputed issues of fact as to whether the testator was mentally competent to make a will at the time he executed the will in question.

It is also insisted that the court erred in refusing to tell the jury that there was not sufficient legal evidence to warrant a finding that the will should be admitted to probate. On this point but little need be said. It is true that the evidence was conflicting as to whether or not the testator was mentally competent to make a will at the time he executed the will in question, but, according to the evidence for the proponents of the will, the testator was of sound mind and perfectly capable of making a will at the time he executed the will under consideration in this case. Indeed, the evidence for the proponents tends to show that the mind of the testator remained unimpaired for ten years after he executed his will.

We find no reversible error in the record, and the judgment will therefore be affirmed.