KRAMIEN *v.* STATE OF INDIANA.

[No. 26,279. Filed April 9, 1935.]

*Otto H. Krieg* and *Eichhorn, Gordon & Edris,* for appellant.

*Philip Lutz, Jr.,* Attorney-General, and *Paul K. Shepard,* Deputy Attorney-General, for appellee.

HUGHES, J.—Appellant was convicted of grand larceny upon the following count of an indictment:

"The Grand Jurors of Huntington County aforesaid in the name and by the authority of the State of Indiana, for a second and further count and indictment on their oaths, present that one John A. Kramien on the 31st day of August, A. D. 1931, at and in said County, State aforesaid, did then and there unlawfully and feloniously take, steal and carry away of the personal goods and chattels of Oscar Bradley, Win Runyan and Ben Biliter as Trustees of and for the Huntington Young Men's Christian Association of a corporation then and there duly organized and existing under and by virtue of the laws of the State of Indiana a certain check for the payment of money drawn on the First National Bank of Huntington, Indiana, which said check is in the words and figures following, to-wit:

'YOUNG MEN'S CHRISTIAN ASSOCIATION.
Huntington, Ind., Aug. 31st, 1931
F. E. Cutshall, V.-Pres.

No. 2936

Safety
First National Bank, Huntington, Ind.
Pay to the order of J. A. Kramien           ·$125.00
One Hundred and Twenty-Five and—no/100
DOLLARS
THE FIRST NATIONAL BANK
71-189 HUNTINGTON, IND.
By J. P. Young,
Treasurer'

which said check was then and there of the value of One Hundred and Twenty-Five Dollars, the same being contrary to the form of the Statute in such cases made and provided and against the peace and dignity of the State of Indiana."

The errors relied upon for reversal are as follows:

(1) The court erred in overruling appellant's motion to quash the second count of the indictment.

(2) The court erred in overruling the appellant's motion for a new trial.

It is the contention of appellant that the count of the indictment as above set out is bad for uncertainty, and that the facts stated do not constitute a public offense.

The check is set out in the indictment as an exhibit and the rule is that if there is a variance between the allegations of a pleading and the exhibit, the exhibit will control. *Cotton* v. *State ex rel.* (1878), 64 Ind. 573; *Harrison* v. *Lackey* (1897), 149 Ind. 10, 48 N. E. 254; *Forbes* v. *Union Ins. Co.* (1898), 151 Ind. 89, 51 N. E. 84.

It is alleged in the indictment that the check was the personal goods and chattels of Oscar Bradley, Win Runyan and Ben Biliter, as trustees of and for the Huntington Young Men's Christian Association, and that it was of the value of one hundred and twenty-five dollars. Unless the check had been delivered

it was of no value and of no force. *Palmer* v. *Poor* (1889), 121 Ind. 135, 22 N. E. 984; *Purviance, Admr.* v. *Jones* (1889), 120 Ind. 162, 21 N. E. 1099; *Scobey* v. *Walker* (1888), 114 Ind. 254, 15 N. E. 674. If, as alleged in the indictment, the check was of the value of one hundred and twenty-five dollars, then it must be presumed that the check had been delivered to the payee, and in that event it was the property of the payee and not the property of the persons named. It is further to be noted that there is nothing in the indictment to show that the check was to be paid from funds belonging to the Huntington Young Men's Christian Association, other than the check has as its caption "Young Men's Christian Association." This does not necessarily mean "Huntington Young Men's Christian Association." Neither does the indictment show that "J. P. Young, Treasurer," the maker of the check, was the treasurer of the "Huntington Young Men's Christian Association."

If a charge of larceny could be sustained in the instant case it could only be done upon the theory that the possession of the check was obtained by a trick and artifice on the part of the appellant. And upon an examination of the evidence it clearly appears to us that this was not done. The evidence shows beyond dispute that the appellant for several years had been the secretary of the Huntington Young Men's Christian Association; that his salary was three thousand dollars per year; that payments were made every two weeks in the sum of one hundred and twenty-five dollars; that the checks were made out in the office and then taken to the proper officers to be signed and countersigned. The evidence further shows that he had been overpaid for a considerable period of time; that the advance payments were entered in the books of the association, but the officers did not know of these ad-

vance payments, but could have known upon an examination of the books. The particular check in question was made and sent by an office boy to the maker, J. P. Young, for his signature and to F. E. Cutshall to be countersigned. This was the usual practice during the course of years. When the check was presented each of the parties signed the same without asking any questions, and the check, after being signed and countersigned, was returned and delivered to the appellant. The check, as seen, does not specify that it was for salary, nor for any given period for services rendered. The makers understood, however, that it was for services rendered by the appellant, and they voluntarily signed the check and delivered the same to the appellant in payment for his services as secretary. We can not say that the foregoing state of facts amount, in law, to a trick or artifice that would constitute larceny.

In the case of *Roberts* v. *State* (1913), 181 Ind. 520, 523, 104 N. E. 970, the court said:

"The distinction between the crime of larceny and that of obtaining property by false pretense is concisely and accurately stated by Mr. Russell, in his work on crimes, as follows: 'If by means of any trick or artifice the owner of property is induced to part with the possession only, still meaning to retain the right of property, the taking by such means will amount to larceny; but if the owner part with not only the possession of the goods, but the right of property in them also, the offense of the party obtaining them will not be larceny, but the offense of obtaining goods by false pretense.'"

The court further said:

"This distinction has been recognized by this court whenever the question has been presented, ..." and citing a long list of Indiana cases.

In the case of *Perkins* v. *State* (1879), 65 Ind. 317, 320, it is said:

"It is doubtless true in many cases that where a party obtains possession of property from the

owner, with his consent, by a fraudulent trick or device, with the felonious intent to deprive the owner thereof, he may be guilty of larceny. *Huber* v. *State,* 57 Ind. 341. But, so far as we are advised, this has never been held to the case where the owner voluntarily parts with the possession, for the purpose and with the intention of parting with the title, without any expectation of its being returned though he may have been induced thereto by the fraud of the person to whom the possession and title have been transferred."

And in 36 C. J., page 777, we find the following statement:

"If the owner of money or a chattel delivers it to another with the intention not only of parting with the possession, but also of investing the person to whom it is delivered with the title to it, such person is not guilty of larceny in receiving it, although the delivery was induced by the most flagrant fraud or by the commission of a forgery, for the reason that the title having passed, there is no one other than himself in whom said indictment for larceny can lay the ownership and possession of the thing taken."

We think when the foregoing statements of the law are applied to the facts in the instant case it is clear that appellant would not be guilty of larceny. The check was voluntarily delivered to the appellant with the intention of parting with the title thereof and of investing title in appellant, and under such circumstances he could not be guilty of larceny. The fact that the owner intends to part with the possession and title to property marks the distinction between larceny and false pretense. *Williams* v. *State* (1905), 165 Ind. 472, 75 N. E. 875.

We think that the motion to quash the count of the indictment, upon which the appellant was convicted, should have been sustained and the court committed error in overruling said motion. And we are clearly of the opinion that the evidence in the case does not show that the appellant is guilty of larceny.

Judgment reversed.