SUSAN VIGEL, PLAINTIFF IN ERROR, *v.* HENRY NAYLOR, ADMINISTRATOR OF GEORGE NAYLOR, DECEASED.

On a petition for freedom, the petitioner proved that one Kirby had emancipated all his slaves by will; some immediately and some at a future day.
The petitioner, in order to bring herself within this category and show that

had been the slave of Kirby, offered to prove that her mother and brother and sister had recovered their freedom by suits brought against George Naylor, whose administrator, Henry Naylor, the defendant in the present suit was; and that it was very unusual to separate from the mother a child so young as the petitioner was at the time of Kirby's death.

Proofs of these circumstances were not allowed by the court below to go to the jury. In this the court was in error.

The recoveries of the mother and sister against George Naylor ought to have been allowed to go to the jury. They were not *res inter alios acta.* This case distinguished from that of Davis *v.* Wood, 1 Wheaton, 6.

THIS case was brought up by writ of error from the Circuit Court of the United States for the District of Columbia.

It was a petition for freedom filed by Susan Vigel, under the circumstances which are stated in the opinion of the court.

It was argued by *Mr. Blair* for the plaintiff in error, and *Mr. Bradley* for the defendant.

Mr. Justice CATRON delivered the opinion of the court.

Susan Vigel sued Henry Naylor, administrator of George Naylor, by a petition for freedom in the Circuit Court of this District. He pleaded that she was his slave. On the trial of this issue, she offered in evidence the will of John B. Kirby, by which all his slaves over thirty-five years of age were emancipated; and all those under that age were to be emancipated—the males at thirty-five, and the females at thirty years of age. This was allowed by an act of the Legislature of Maryland of 1796, ch. 67, sec. 13.

A witness testified on the petitioner's behalf, "that a few days after the death of Kirby, which took place in 1828, George Naylor brought to his house, where witness was then at work, the petitioner, her mother, and her sister; and said George Naylor stated to the witnesses at the time, that he had brought said negroes from the residence of said Kirby; and that the petitioner was then between six and eight years of age."

The petitioner then offered to prove that her brother Richard, and her mother Sarah, and her sister Eliza, had obtained

their freedom under the will of Kirby; that Sarah, the mother, and Eliza, had recovered their freedom by suits brought against George Naylor, which were defended by him. In the one instituted by Sarah, judgment was rendered in 1838; and that brought by Eliza was decided in her favor in 1842. The petitioner also offered to prove that it is very unusual for children of the age of the petitioner at the time of Kirby's death to be separated from their parents; but the court excluded the testimony offered from the jury; to which exception was taken.

The defendant then proved by two witnesses, that they had known the petitioner from her birth, and that she was born the property of George Naylor; and that she never was out of his possession, or that of his successor and administrator. It is objected that no records of the verdicts and judgments were offered to prove the recoveries. The bill of exceptions states, generally, that she offered to prove the facts, but the court refused to hear the evidence.

Transcripts of the records being the best evidence, and their production necessary, it is manifest that the offer to prove the recoveries was not refused for the reason that the record evidence was absent, but because the recoveries were deemed irrelevant, or that they were *inter alios acta*, and therefore. incompetent as proof in the cause for any purpose. And the first question is, was the evidence offered relevant, when taken in connection with the parol evidence?

The girl was six or eight years old when George Naylor brought her home in 1828, with her mother and sister, from the late residence of Kirby, the testator. It was offered to be proved, and we must take it to be true, that it could have been proved that it was unusual to separate the mother from a slave-child as young as the petitioner was at the time Kirby's will took effect.

If Sarah, the mother, Richard, the brother, and Eliza, the sister, were the slaves of Kirby at his death, and acquired their freedom under his will, does this circumstance furnish evidence from which a jury might infer, in connection with other evidence, that the petitioner was also the slave of Kirby when

he died, and entitled to her freedom on arriving at thirty years of age? It is immaterial whether the evidence offered and rejected was weak or strong to prove the fact. The question is, was it competent to go to the jury? Castle *v.* Bullard, 23 How., 187. If so, it was for them to judge of its force and effect. If this child had been only one year old or under when Naylor got possession of her and of her mother, and other children in company with her, the presumption would be stronger, that her condition and that of her mother was the same, and both the slaves of Kirby, and were manumitted by his will.

By the rejection of the evidence the case was stripped of all proof that Susan, the petitioner, ever belonged to Kirby, the testator; whereas, had it been admitted, it would have proved that Susan's mother, and her other children, belonged to the estate of Kirby after his death, and were emancipated by his will; and having emancipated *all* his slaves, a presumption could have been founded on this proof by the jury, that an infant child of the same family was the slave of Kirby also, especially as Naylor brought the slaves as a family from Kirby's late residence.

2. Was the record of the judgment *inter alios acta*, and therefore incompetent?

In the case of Davis *v.* Wood, (1 Wheat., 6,) it was held by this court that a judgment in favor of the mother establishing her freedom against Swan, a third person, could not be given in evidence in a suit by the child of that mother as tending to prove his freedom. On the trial below, the petitioner offered to prove by witnesses, that they had heard old persons, now dead, declare that a certain Mary Davis, now also dead, was a white woman, born in England, and such was the general report in the neighborhood where she lived; and further offered to prove by the same kind of testimony, that Susan Davis, the mother of the petitioner, was lineally descended in the female line from the said Mary; which evidence by hearsay and general reputation the court refused to admit, except so far as it was applicable to the fact of the petitioner's pedigree. And the ruling below this court affirmed.

*Vigel* v. *Naylor.*

There is no question arising in the cause before us involving the consideration to what extent hearsay evidence to prove the status of freedom is admissible, and therefore we refrain from discussing the first point decided in Davis *v.* Wood. In that case, Susan, the mother of John, was sold by Wood, the defendant, to Caleb Swan; and she and her daughter, Ary, who had likewise been sold, sued Swan for their freedom, and recovered it. This record of recovery was offered in evidence on behalf of John, but was rejected on the trial.

This court held, that "as to the second exception, the record was not between the same parties. The rule is, that verdicts are evidence between parties and privies. The court does not feel inclined to enlarge the exceptions to this general rule, and therefore the judgment of the court below is affirmed."

This is the judgment with which we have to deal. The difference in the case under consideration and the one found in 1 Wheat., is, that here Susan's mother and sister recovered their freedom from Naylor, he being the defendant in both actions. There the mother and daughter recovered their freedom from Swan, who had purchased them of Wood.

This court having cut off all evidence by hearsay and general reputation—1st, that the female ancestor of the petitioners was a white English woman, and free; and 2d, that the record of the recovery of freedom by John's mother and sister from Swan was incompetent—of course the petitioner had to go out of court, having proved no case.

There the verdict was not between the same parties. Here the suit was between George Naylor and the mother of Susan; as between the mother and Naylor, the verdict was conclusive of her right to freedom; and Susan, the child, was a privy in blood to the mother, (being her heir, if free,) and as such heir, comes within the rule laid down in Davis *v.* Wood, and could avail herself of that verdict as equally conclusive, if she could further prove that she was born after the impetration of the mother's writ. Alexander *v.* Stokely, 7 Sergt. and R., 300; Pegram *v.* Isabell, 2 Hen. and M.; Chancellor *v.* Milton, 2 B. Monroe, 25. Or, if she could prove that she was born after Kirby's death, and that her mother recovered her freedom

under his will—and which facts might have been established by further proof—these circumstances could be let in as additional evidence. 2 Hening and M., 211.

Owing to the lapse of time since Mr. Kirby died, the petitioner sought to establish her case by circumstantial evidence. It was rejected; for what particular reason, does not appear.

As already stated, we think the evidence offered had weight enough in it to be pertinent, and ought therefore to have been submitted to the jury. 23 How., 187.

How it was proposed to be proved that Richard was a free man, and acquired his freedom under the will, does not appear; but as to Eliza, the sister, a record of recovery by her of her freedom against Naylor was offered as evidence, and rejected. The record could have proved the existence of the verdict and judgment as a FACT, and the legal consequences flowing from the fact, namely, that the petitioner, Eliza, was a free person. As to George Naylor and his representative, her status of freedom is a conclusive fact. And what is the effect of the record as respects other persons? Eliza sued George Naylor, declaring that she was free. He replied that she was his slave. She had a verdict that she was free. By the verdict and judgment, she took to herself all Naylor's title; it was *vested* in her as Naylor had it. Harris v. Clarissa, 6 Yerger's Ten. R., 243. He had had her in possession twelve years, and had title by the act of limitations of six years, as to other contestants who might set up claim to her as a slave. She can rely on his title as if he had manumitted her; the record has this effect. It stands on the footing that a recorded deed of manumission to her from Naylor would stand, or that a recorded bill of sale from him to a purchaser would stand. In either case, the title-paper could be given in evidence to prove the title; and the title thus acquired must be deemed valid until some one else legally establishes a better. This record evidence may be used in any suit by a third person, where the evidence is pertinent, of which the court must judge from facts and circumstances appearing on the trial; and to this effect are the adjudications of the State courts generally. Pegram v. Isabell, in Virginia, 2 Hen. and M., 210; Alexander v. Stokely, 7 Sergt

and R., 290, in Pennsylvania; Vaughan *v.* Phebe, Martin and Y. R., 6, in Tennessee; Chancellor *v.* Milton, 2 B. Monroe's R., 25, in Kentucky. In Maryland, no decision is found on the subject.

In the next place, the record operates on the *status* of the person; it sets him free or pronounces him a slave, and binds him by the verdict either way. Shelton *v.* Barbour, 2 Wash. Va. R., 82.

In some of the States, the suit may be in equity, and the status of freedom be established by a decree. Fisher's negroes *v.* Dobbs et al., 6 Yerg., 119; Reuben *v.* Paraish, 6 Humphrey's R., 122.

It is ordered that the judgment of the Circuit Court be reversed, and the cause remanded for another trial.