Missouri, Kansas and Texas Railway Company of Texas v. M. J. Byrd.

Decided October 18, 1905.

**1.—Carriers of Passengers—Unwarmed Coach Near Depot—Degree of Care.**

Where a coach was placed near the depot for persons to go on board at night to await the train which was to take the coach out several hours later, plaintiff's wife became a passenger upon entering such coach under the direction of the carrier's agent, and in an action for injury sustained by her because of the coach being cold the charge of the court properly imposed on the carrier the duty to exercise that high degree of care that very cautious and prudent persons would have exercised under the circumstances.

**2.—Same—Double Damages—Charge.**

Where one instruction permitted damages for the cold and suffering which plaintiff's wife sustained while in the coach, and another authorized damages for physical and mental pain she suffered and would thereafter suffer in consequence of disease proximately caused by the condition of the car, the charge did not authorize double damages.

**3.—Same—Failure to Keep Coach Warmed.**

Evidence considered and held to sustain a finding of negligence in failing to keep a coach warmed whereby a passenger was caused to suffer and contract disease.

**4.—Proximate Cause—Charge.**

Charges upon proximate cause in a case where a passenger suffered from cold and contracted disease because a coach was unwarmed, held correct.

**5.—Personal Injury—Predisposition to Disease.**

A carrier is not relieved of liability for exposing a passenger to cold, thus bringing on disease, by reason of the fact that the passenger was in such condition as to predispose her to dangerous consequences from being exposed to cold.

Appeal from the District Court of Hunt. Tried below before Hon. H. C. Connor.

*Perkins, Craddock & Wall* and *T. S. Miller,* for appellant.

*Robert F. Spearman, D. W. Huffar* and *Evans & Elder,* for appellee.

JAMES, CHIEF JUSTICE.—The action was by appellee to recover for injury alleged to have been sustained by his wife. The negligence alleged was the permitting of a passenger coach to become and remain cold, whereby she became chilled and numb, taking from it a deep-seated cough, which superinduced a high fever, and from which she suffered much physical pain and mental anguish; and further, that, as a direct result from said exposure, and from the cold contracted therefrom, she had been permanently injured and diseased in her head, nose, ears, throat, bronchial tubes and lungs, from which she had suffered, and still suffers, much physical pain and mental anguish and that she has grown gradually worse, and that, as a direct and proximate result of said exposure, she has developed consumption, etc. There was a verdict in plaintiff's favor for $7,300.

The first assignment of error involves the following part of the charge: "Railway companies are not insurers of the safety and comfort of their passengers, but they are required to exercise that high degree of care that very cautious and prudent persons would have exercised under the same or similar circumstances, and a failure to do so is negligence, as that term is hereinafter defined." Appellant claims that this imposed a more onerous duty on it than the law exacted. As stating a rule of law, the charge can not be questioned. (Railway v. Byers, 70 S. W. Rep., 558.) Was it proper to apply it to the circumstances of this case? The testimony showed that Mrs. Byrd obtained her ticket from Greenville, Texas, to Cave Spring, Georgia. The train upon which she was to leave Greenville was due to pass there at 1:30 a. m., and a coach was provided by defendant which was standing on the tracks, to be attached to said train when it came along. About six or seven o'clock she had her ticket. She complained of the depot being cold, and was informed that they were not going to heat it up because the coach was there to keep the passengers from being cold. Somebody phoned for the ticket agent to come and show them what car to take, and he came and carried them to said coach. This coach had been placed near the station for persons to go on board of same on that night to await the train; a fire was made therein early in the evening. Passengers were escorted to this car by the agent, among them Mrs. Byrd, who was attended by her husband and her three small children, the latter accompanying her on the trip. The coach was ready for passengers at that time, and was coupled to the train about 2:30 the next morning. Her husband had left her about ten o'clock. When they got into this coach it was heated with a good fire, but between ten and eleven o'clock the fire died down considerably, and plaintiff commenced getting cold. Nothing was done to renew the fire, and the car was not heated until in the morning, some time after the train left. After the car became cold she complained to a man who had an oil can in his hand; he went out without doing anything. It was exposure to cold, under substantially the above circumstances, which led to her injury, according to testimony. It is not necessary in this place to recite these consequences.

The inquiry is, did these circumstances render the rule stated an improper one to give in charge to the jury? All appellant says in its brief in support of the assignment is: that Mrs. Byrd did not leave the

car after it began to get cold; that she knew her train would not leave until 1:30 a. m., and which, in fact, did not leave until an hour after that, and she did not repair to the depot after eleven o'clock, which the testimony showed was warm and comfortable; that she would have exercised ordinary care to prevent getting cold, after the fire died down in the coach, by going into the waiting room, or to some one of the hotels which were near; that appellant owed her and the other passengers in the coach the duty of "ordinary care to keep it heated and comfortable—the same care as if she had been in the depot building," and it was her duty to have exercised ordinary care by repairing to the depot or some convenient place near by for her own protection.

All this would seem to concern her contributory negligence, rather than the degree of care required of the carrier. In a printed argument appellant improves on its brief, and urges that plaintiff's wife was not a passenger in the sense that required of appellant the high degree of care for her protection which the charge imposed; that appellant was not, for the time being, her bailee, and she did not of necessity have to trust herself wholly to appellant as to means and measures for her safety. There was evidence of one witness that the station was kept warm that night. But it was undisputed that the coach in question was made ready for passengers about eight o'clock, to enable people to go in there and stay until the train left, and that passengers were taken to it for that purpose. There was no evidence that anyone notified Mrs. Byrd that the station was warm.

We think the testimony establishes that she was a passenger in the car of appellant for the purpose of the particular journey, and that appellant was the bailee of her person in the legal sense of that expression. We think, however, that the rule of care announced in the charge applies in favor of any person who sustains the relation of passenger. The question was substantially presented in Railway v. Turney (78 S. W. Rep., 256). After placing Mrs. Byrd in the coach, to remain there until the train started, the duty devolved on defendant to protect her from the weather while there, by the use of such means as would be dictated by the utmost care that would be used by very prudent persons to that end. To have provided another place for her that was comfortable, consistent with her taking the train which was to carry her out, and notifying her of this fact, may have fulfilled the measure of duty which the law imposed on appellant, but this was not made to appear.

The fourth and fifth assignments allege error in the following paragraphs of the charge: "If you believe from the evidence that on the night of December 20, 1901, the weather was cold and uncomfortable, and if you believe the defendant's agent instructed Mrs. Byrd to go into the car that she went into; and if you believe that after she remained in said car a while the fire 'died out,' and the car became cold and uncomfortable; and if you believe that Mrs. Byrd became cold, and suffered from cold in said car while on the defendant's line of road; and if you believe from the evidence that the servants of defendant were guilty of negligence with respect to the condition of said car (that is, if you believe they failed to exercise that high degree of care to keep said car reasonably warm and comfortable that very cautious and pru-

dent persons would have exercised under the same or similar circumstances), and if you believe such negligence, if any, was the direct and proximate cause of Mrs. Byrd's cold and suffering, then in that event you will find for the plaintiff, and assess her damages at such sum as will now, in cash, compensate them for the cold and suffering, if any, of his wife in said car on the defendant's line of road.

"And if you believe from the evidence that, at the time Mrs. Byrd went into the car, she was in good health, and free from pulmonary or lung trouble; and if you believe that, in consequence of getting cold in said car (if she did) she contracted a severe cold, became sick, as alleged by the plaintiff, and that she now has consumption, as alleged by the plaintiff, and if you believe such sickness and consumption, if any, was 'proximately caused' by the negligence, if any, of the defendant's servants, with respect to the condition of said car, as above explained, then in that event you will also find for the plaintiff on that issue, and allow him such sum as will now, in cash, compensate him for the physical pain and mental anguish, if any, that Mrs. Byrd has suffered and will suffer in consequence of such disease, if any, and for the effect, if any, of such sickness, if any, upon Mrs. Byrd's ability to labor and perform her usual and customary duties."

Double damages are said to have been authorized by these instructions. This is not the case. The first of these charges permitted damages in respect to the cold and suffering the woman sustained while in the car. She was taken from the car late in the night, or about daylight, and removed to a sleeper. The second authorized additional damages for physical and mental pain she suffered and will suffer in consequence of disease proximately caused by the condition of the car. The jury could not, we think, have failed to understand that the first paragraph contemplated suffering sustained in the car from the inclemency of the weather, and that the latter had reference to sickness which developed from the exposure.

The tenth assignment complains of the refusal of the following charge: "You are instructed that the proximate cause of an event, as the term 'proximate cause' is used in the main charge, means that cause which, in a natural and continuous sequence, unbroken by any new cause, produces or brings about such event. If you believe from the evidence that the car upon which Mrs. Byrd took passage at Greenville was cold, and not comfortably heated, and if you further believe from the evidence that the defendant was negligent with respect to the condition of said car at said time, and that, as a result thereof, Mrs. Byrd took and suffered with cold, and if you further believe from the evidence that Mrs. Byrd now has the consumption or tuberculosis, yet, unless you believe from the evidence that such consumption or tuberculosis was caused solely by her having taken cold in said car, if she so took cold, or by her exposure in said car at said time, if she was therein exposed, and that such cold or exposure, if any, was the direct and sole cause of such consumption or tuberculosis, then the plaintiff can not recover damages for the injuries, if any, resulting from such consumption or tuberculosis. In this connection you are further charged that the burden of proof is upon the plaintiff to show, by a preponderance of the evidence, that the consumption or tuberculosis of Mrs. Byrd, if

she is now suffering with such disease, was proximately and solely caused by her exposure, if she was exposed, in said car, and that such exposure, if any, was caused by the negligence of the defendant."

The charges which the court gave on this subject were: "By the term 'proximate cause,' as that term is hereafter used, is meant that cause which, in a continuous sequence, unbroken by any new, independent cause, produces an event or injury, and but for which the same would not have occurred." Also: "If you believe from the evidence that said car was cold and uncomfortable, and that the servants of the defendant were guilty of negligence with respect to the condition of said car, and that Mrs. Byrd suffered with cold while in said car, and that she now has consumption, yet, unless you believe from the evidence that Mrs. Byrd's said disease, if she has such, was proximately caused by the defendant's negligence, if any, then and in that event you will find for the defendant on the issue of Mrs. Byrd's sickness and disease."

Appellant's brief on the assignment in question undertakes merely to show that the preponderance of the testimony was against her having consumption, and, if she had it, it was not due to the exposure which she met with while in the appellant's coach. We presume counsel mean by this to show that entirely different causes produced her consumption. If so, the instruction was for the jury to find for defendant on such issue.

As to the burden of proof, the court charged in the first part of the charge: "The burden of proof is upon plaintiff to show, by a preponderance of the evidence, that he is entitled to recover under the instructions hereinafter given you." The court did not commit error in refusing the instructions for the reason that the charges given stated the law rather than the requested one.

The proposition under the remaining assignments is that the verdict is without evidence to support it. It is insisted that, because four of defendant's employes testified that the coach was kept warm and comfortable, and only Mrs. Byrd's testimony was to the contrary, the fact that the coach was allowed to become cold was not sufficiently proved. It was a night in December, about Christmas, and the weather very cold. In addition to Mrs. Byrd's testimony there were circumstances that tended to verify her statement. Appellant's brief shows that two of these witnesses, Rogers and Inge, visited the coach at least once an hour from the time the fire was started up to the time the train left, at 2:30 in the morning. They both made inquiries of the passengers in the coach as to the warmth of the car and as to their comfort, and none complained. That the jury should have accepted Mrs. Byrd's statement is hardly a matter of surprise. If the coach was warm, what was the occasion for asking the passengers as to their being warm and comfortable? Besides, this defendant probably had the means of knowing who the other passengers were (excursionists), and to obtain their testimony, and plaintiff did not. She testified that about daylight the conductor had a porter remove her to a sleeper on account of her condition, where she remained until the afternoon. The testimony as to her condition previous to this journey would clearly admit of finding that she was in fairly good health, and, though she had suffered

from female disease and a bronchial affection, she did not have consumption. If, however, she was in such condition as predisposed her to dangerous consequences from being exposed for a considerable time to cold, we do not see that this would have any effect on appellant's liability for exposing her to cold and bringing on such results.

She testified as follows: "My husband had then been gone about three-quarters of an hour. I got awful cold all over. My feet were very cold and I took the sneezes. I made complaint of being cold to a man who had an oil can in his hand. He went out without doing anything. The car I was in was to leave Greenville at 1:30 a. m. All the passengers were to be on board at that time, but it did not get away until 2:30. It was about ten o'clock—somewhere toward eleven o'clock —when the coach got cold. There was a heater in the coach and it was filled up with coal, but the coal was not burning, and that was the way it was when the coach left here. After I left here the heater was not heated up at all. At 2:30 a. m. a man came in and said when the engine got hooked onto the coach it would heat up the car—when the train got started it would heat up the car. It "het" up the car some time in the morning, but I can not say what time it was, as I did not have any timepiece to look at. I suppose it was some time about four or five o'clock in the morning before it got warm. I did not leave that coach until the negro porter put me into a sleeper. By reason of getting cold I was taken with a bad cough and had a pain in my side, and a man came to me and asked if there was anything he could do for me. They gave me some toddy for the pain in my side and for the cough before daylight. I don't remember the station I was at at that time. I was very sick, and had a high fever at daylight; and a little after daylight a man came and gave me some medicine. I don't remember who it was, because I was too bad off. The conductor had the negro porter to come and put me in the sleeper. I was very sick when I left here, and I was to stay in the sleeper until about five o'clock in the evening, but stayed only until 3 p. m., and then was told I would have to go in another coach. I then had a pain in my side and still had high fever, which continued all that day until that night about one o'clock. When I reached Memphis I went to a boarding house. A lady there made me a fire and sat up with me a while. I was sweating, and I had sweated my fever off after midnight that night at Memphis. The next morning I came back to the depot at Memphis and gave my children their breakfast and got them ready to go the journey. We got to Birmingham about ten o'clock that night and left there about 1 a. m. on a special train for Atlanta. That day between Memphis and Birmingham I was suffering with pain in my side and head, and did not eat no breakfast at the depot, but I did not have any fever then because I sweated it off. Q. 'Did you have any cough?' A. 'Yes, sir. We got to Cave Springs, Georgia, about 1 p. m. Monday evening; stayed there just long enough to get off of the train. I visited near Cave Springs for about twenty-eight days from the time I left here. I would have come back earlier, but was not able to. I was like a person with pneumonia. I have had an awful bad cough ever since I came back to Greenville; have been taking medicine all the time for my cough, and part of the time have not been able to be up at all. Last

Tuesday I had a bad spell of hemorrhages and did not stay up any at all. Tuesday morning I had a "relax;" it did not last as long as the other one. Friday I got a spell of hemorrhages. Sometimes I would be in bed. I have had my lungs tested. I have had a fever maybe for a week at a time."

There was medical testimony that fever can be produced by cold, which might develop in a few hours after taking cold. Also medical testimony in response to hypothetical questions based on plaintiff's testimony, as to her condition and symptoms when removed to the sleeper, and afterwards, to the effect that the exposure on that night was the cause. That Mrs. Byrd was taken in charge by the conductor, and transferred to a sleeper on account of her condition, would indicate that her condition was serious. It is not disputed that she was so removed, and, although appellant must have known the conductor and porter on the train, their testimony was not resorted to to contradict her as to the fact of her removal or her condition at the time.

There was testimony, therefore, to reasonably warrant the jury in finding, from the facts and circumstances in the evidence, that the woman was exposed to severe cold as she testified, and testimony, also, that reasonably admitted of the conclusion that the exposure that night caused her the suffering she says she sustained in the car, and the disease developed afterwards. Affirmed.

*Affirmed.*

Writ of error refused.