## CHICAGO, R. I. & P. RY. CO. v. GILMORE.

No. 5328.    Opinion Filed November 9, 1915.

(152 Pac. 1096.)

1. **APPEAL AND ERROR—Review—Verdict.** A verdict is sustained by sufficient evidence if there is any whatever reasonably tending to support the same.

2. **SAME.** In ascertaining if a verdict is sustained by sufficient evidence, all the evidence before the trial court, including every reasonable inference therefrom, which tends to support the verdict, is accepted as true.

3. **APPEAL AND ERROR—Carriers—Verdict—Disturbance—Carriage of Passengers—Actions—Evidence.** Where there is testimony to the effect that plaintiff, in extremely cold weather, drove, well wrapped, but in an open vehicle, for an hour and a half, to defendant's station to take its train as a passenger, and was very cold upon his arrival thereat; that he was thereupon denied admission to a room in which there was a fire at said station, and, finding the waiting room he was entitled to enter in use as a storage room and without heat, he waited on the outside of the station building for 30 minutes, during which time he suffered much more severely from cold than while en route to the station; that upon his arrival home soon thereafter he was confined to his bed for eight or ten days with pains in his legs, his arms, one shoulder, one foot, both lungs, his voice also being affected, which affliction was followed by somewhat impaired health, and at the trial of this case, about 14 months later, he had two degrees of fever and water in his abdomen, resulting from nephritis and inflammation of the kidneys, which is very often caused by exposure to weather; that his prior health had been good; and that the defendant owed and breached its duty to furnish him a reasonably comfortable waiting room during said 30 minutes; and where said exposure to weather is the only cause disclosed by the evidence of his said sufferings and afflictions—there is evidence reasonably tending to show that his sufferings during said 30 minutes, and also his subsequent suffering and afflictions, were either in whole or in some substantial part proximately caused by defendant's said breach of duty, and the difficulty of determining to what extent such breach of duty contributed to his injuries does not deprive him of the right to have the question submitted to the jury.

(a) Only when the court can say that an inference of proximate cause by a jury is unwarranted by the evidence will the verdict thereon be disturbed.

4. **APPEAL AND ERROR—Evidence—Opinion Evidence—Expert Testimony.** It may be, and often is, forensically, but never legally, necessary, in determining questions of science, to produce the opinion testimony of expert witnesses to aid the jury in sound reasoning, and thus secure a correct inference and finding from proven basic facts; and, although a court may not have actual scientific knowledge sufficient to enable it in such cases to affirm that a verdict predicated upon an inference and finding from such basic facts is correct, it will not disturb such verdict, unless convinced that the same is unwarranted.

(a) Expert opinion testimony is not binding upon, and is only advisory of, the jury, and therefore, strictly speaking, is never

legally necessary to sustain a verdict involving a determination of such question.

(Syllabus by Thacker, C.)

*Error from District Court, Blaine County;*
*J. R. Tolbert, Judge.*

Action by J. G. Gilmore against the Chicago, Rock Island & Pacific Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

The plaintiff in error will be designated as defendant, and defendant in error as plaintiff, in accord with their respective titles in the trial court.

Plaintiff, a negro preacher, 49 years old, "well wrapped," and his face protected, on November 27, 1911, a very cold and stormy day, with a strong wind from the northwest and some snow and sleet falling, went, facing the wind at times and with side to it at other times, from a settlement called "Jacks," in Blaine county, eight miles, to defendant's station at Greenfield, in the same county, to take, as he did, defendant's train thence to Watonga, in said county. The plaintiff testified that:

"It was a fierce day, snowy day, stormy day, sleeting and snowing, and windy, and extremely cold."

The plaintiff testified as to his suffering from cold en route and upon his arrival at the station as follows:

"Well, I was cold, certainly. I was indeed cold. I presume we was about an hour and half making that distance. Come with our faces to the wind in many instances coming to the depot, and had it sideways coming, but I didn't feel as cold riding as I did when I got out of the vehicle. Then it seems I got cold sure enough. I was well wrapped and had wraps on me and around me. My face was well secured, but when I got out I got cold right. * * * Well, I was stiff and numb, and couldn't

really use myself actively as I did before being out there. I was just numb and stiff, and my feet was chilled. The man who was driving his hands got numb, and he couldn't hold the lines, and I drove until my hands give out, and the horses just brought us in.    *    *    *    On the depot after I got out in the wind I got colder, because the wind got to me better. I got completely stiff. After the wind got to sifting through me, and the snow was falling tremendously, and the wind was blowing, too. We was just stiff."

On cross-examination the plaintiff was asked and answered questions as follows:

"Q.  In coming in from the country your hands became thoroughly numb and stiff in driving?  A. Yes, sir. Q. Were your feet cold?  A. Yes, sir.  Q. You were pretty cold all over when you got to the depot?  A. Not so fearfully cold; we were cold."

Upon plaintiff's arrival at the Greenfield station about a half an hour before train time he found the negro waiting room without heat and without any equipment therefor, except a stove with a fire in it in the adjoining white waiting room, from which the negro section was separated by a partition wall, in the upper part of which there was a steel latticed opening or wire screen with one-inch meshes about three and one-half by four and one-half feet in size. This negro waiting room was about four or five feet wide and about six feet long, and was at this time in use as a storage room for Irish potatoes in sacks. The plaintiff further testified:

"The gentleman who hauled me there, we got off and made entrance in the colored department, and I found it obstructed by something. Couldn't get the door open very far, and I looked inside, and saw quite a number of sacks of Irish potatoes, I discovered it to be, and it was so very cold I knocked on the window of the

agent's office and asked for a ticket to Watonga. I suppose it was about train time, and after I purchased the ticket I inquired as to the time the train would come, and he said to me the train was an hour late possibly, and maybe more. I says, 'I am about to freeze, and it's very cold, and you haven't got any fire in here;' and he says, 'I am not responsible for no fire not being in that room; I am only the agent here to take care of what the railroad company put here.' I says, 'Then can I come into the other room and get warm?' And he says, 'No; that is against the law,' which I knew it was. I says, "What must I do? If I stay here 'I'll freeze. I can't get in the room.' I says, 'There ought to be something done about this.' He says, 'Well, sue the railroad company; don't sue me. I am only a laborer here, and I only take charge of what they place here. There is a stove in the other room, and I keep fire in there, and not in this room.' * * * I walked around in the front part of the depot thinking what was best for me to do, and this Stewart man saw us over there, and he says, "What is the matter, Uncle Gilmore?' I says, 'We are about to freeze and can't get in to the fire.' He says, 'You come over to Mr. Bartholomew's store.' I says, 'I don't know if we can make it there, we are so cold and stiff.' However, we went over there."

Here the plaintiff testified that while at the depot he stayed "outside the door on that little platform; had no other place to go;" and, further, as to the condition of the negro waiting room:

"* * * And the entire front was obstructed with sacks of Irish potatoes. * * * The wall that divides the colored from the whites—the sacks were leaned up against those walls, and the entrance to the door of the colored department and in the corner as many sacks as could be put in there, coming on up against the door. The hinges of the door was not obstructed completely. You could just get it possibly half foot open. I shoved

that much open, and I got the man to move a sack. * * * After I came out of the door and went around in front of the depot I could see through the window in the white department. * * *"

The evidence reasonably tends to prove that, able to produce bodily heat, as he was under the excitation of the conditions, plaintiff, described and wrapped as he was for its retention while en route to the defendant's station at Greenfield, upon his arrival at the station had not the capacity to continue to produce and retain as much bodily heat, and he suffered much more from cold than he had suffered en route—was in greater need of the aid of external heat.

The evidence reasonably tends to prove that the plaintiff, after waiting in the doorway of the negro waiting room and on the south side of the depot for some 30 minutes, went to a fire in Mr. Bartholomew's store, about 150 or 175 yards away, where, with the exception of one trip to the station to inquire about the train, he remained until the train came in, an hour or more late, when he took the train for his home in Watonga. Mr. Bartholomew testified that plaintiff complained of being and "seemed to be very cold"; and another witness said he "shivered around the stove" in the store and complained of being cold. Upon his arrival at Watonga he went first to a fire at the home of a friend between the station and his own home, and stayed by that fire an hour or more and until he felt sufficiently recovered from the cold to proceed to his own home. Upon his arrival at his own home he went to bed, and was "practically" in bed all the time for about eight or ten days, suffering pain in his legs, his arms, one shoulder, one foot, both lungs, and an impairment of his voice as a result of his

said exposure to the cold weather mentioned. It was sometime in the following January before he was able to perform his ministerial duties "satisfactory to the people," and at the time of the trial he was still "puny" and "stove up." He testified that his affliction is usually termed rheumatism, and that he had had fairly good health prior to his said exposure and suffering from cold. As to this he testified:

"I had fairly good health. I had only one defect in my health. My right leg some 10 or 12 years ago was supposed to have been fractured. Aside from that, I was as healthy as anybody; had no physical misery to deter me in my calling. I went freely and took no medicine. I was all right."

He testified to purchasing medicines, "liniments and different things, and patent medicines, and some to take internally," since the time of his exposure; and on cross-examination he admitted by an affirmative answer to a question directed thereto that he had taken medicine "for biliousness and one thing and another" before that time.

The defendant reserved no exceptions to, interposed no objection to, and made no motion to strike any of the foregoing evidence or any evidence adduced in proof of any of the foregoing facts, which show the case as made out by the plaintiff before resting; and the same stands practically uncontroverted in every important particular. The sufficiency of said evidence to prove that defendant's failure to provide a reasonably comfortable negro waiting room at its said station at Greenfield during the time of plaintiff's said wait thereat was the proximate cause of the plaintiff's subsequent physical condition, as well as his physical condition during the time he was at said

station, was not in any manner, except by demurrer to plaintiff's evidence and by request to direct a verdict, challenged during the trial of this cause; but, to the contrary, the defendant adduced evidence as to his bad physical condition at the time of the trial, about 14 months after the date of his said exposure to cold weather, apparently assuming that his subsequent physical condition was proximately caused by said exposure, and showing such condition to be worse than did the evidence adduced by the plaintiff.

A physician who at the time of the trial examined the plaintiff at the instance of the defendant testified in behalf of the defendant as follows:

"Well, I took off all his clothes, except his shirt, and I pulled those up over his head so all the parts would be exposed. I found on examining him, first, that he has two degrees of fever, and also an accumulation of water in the abdomen, which is due to various causes. He gets up at night from six to eight times, I think he said, to pass his water. Outside of that his physical condition I find is in good shape—as good as you generally find in a man of his age. * * * Exposure to weather is very often the cause of nephritis and inflammation of the kidneys, which causes the accumulation of water in the abdomen."

This physician, upon being specifically questioned by defendant in this regard, further testified that plaintiff's condition could have resulted from "various causes"; that he did not know what per cent. of "nephritis" is caused by exposure to weather; that he did not know how to answer a question as to what is its greatest cause; that "it is an inflamed condition of the kidneys; some people inherit it, and others get it by exposure and hard work and drinking different waters, and others get it by drink-

ing alcohol and whisky"; and that he could not tell whether plaintiff had been so affected a long time or only a short time.

There was no evidence whatever of any cause of plaintiff's said subsequent pains, sufferings, and afflictions other than said "exposure to weather"; and his testimony to his prior good health, without even an attempt on the part of the defendant to discredit the same, tends to negative the existence of any other cause.

At the conclusion of the evidence for the plaintiff the defendant demurred to the same upon the following ground:

"The evidence adduced on behalf of the plaintiff in this cause, together with the lawful inferences that may be drawn therefrom, is insufficient as an action against this defendant."

At the conclusion of all the evidence the defendant moved the court as follows:

"* * * To direct the jury to return a verdict in this case in favor of the defendant on the following grounds, to wit: (1) That the evidence in this case, together with all the lawful inferences to be drawn therefrom, is insufficient to sustain a recovery by the plaintiff against this defendant; (2) for the reason that it is not sufficient and there is no sufficient evidence in this case to sustain a recovery by the plaintiff against the defendant."

All other instructions requested by the defendant were given the jury, and no exception was reserved to any instruction given. The defendant raised no question of contributory negligence either in the trial court or here.

A verdict for plaintiff for $150 was returned, and judgment entered accordingly; and, 'a motion for a new trial having been denied, the defendant brings the case to this court for review.

*C. O. Blake, R. J. Roberts, W. H. Moore, J. G. Gamble,* and *K. W. Shartel,* for plaintiff in error.

*Ed Baker,* for defendant in error.

Opinion by THACKER, C. (after stating the facts as above). The facts in this case are substantially the same as in the case of *St. L., I. M. & S. Ry. Co. v. Lewis,* 39 Okla. 677, 136 Pac. 396; and it appears that the instant case should be affirmed upon the authority of that case.

Other cases involving the same character of breach of duty by carriers of passengers and to the same effect, which seem to supply answers to such questions presented by the defendant in the instant case as are not expressly decided in the case of *St. L., I. M. & S. Ry. Co. v. Lewis, supra,* are the following: *St. L., I. M. & S. Ry. Co. v. Hook,* 83 Ark. 584, 104 S. W. 217; *Draper v. Evansville & Terre Haute R. Co.,* 165 Ind. 117, 74 N. E. 889, 6 Ann. Cas. 569, and notes; *Brackett v. Southern Ry. Co.,* 88 S. C. 447, 70 S. E. 1026, Ann. Cas. 1912C, 1212; *Missouri, K. & T. R. Co. v. McCutcheon,* 33 Tex. Civ. App. 557, 77 S. W. 232; *International & Great Northern R. Co. v. Doolan,* 56 Tex. Civ. App. 503, 120 S. W. 1118; *Chicago, R. I. & G. Ry. Co. v. Groner,* 43 Tex. Civ. App. 264, 95 S. W. 1118; *Texas Midland R. Co. v. Little* (Tex. Civ. App.) 77 S. W. 958; *Missouri, K. & T. R. Co. of Texas v. Byrd,* 40 Tex. Civ. App. 315, 89 S. W. 991; *Cincinnati, N. O. & T. P. Ry. Co. v. Mounts,* 31 Ky. Law Rep. 1162, 104 S. W. 748; *Boothby v. Grand Trunk*

*Ry.*, 66 N. H. 342, 34 Atl. 157. Also see *Bannister v. H. Jevne Co.* (Cal.) 151 Pac. 546.

Among the numerous reported cases involving questions of liability for personal injuries resulting from two or more causes, including as one such cause the negligence of the party against whom the action is brought, are the following. *Pacific Telephone & Telegraph Co. v. Hoffman*, 208 Fed. 221, 125 C. C. A. 421; *Patton v. Southern Ry. Co.*, 82 Fed. 979, 27 C. C. A. 287; *The Joseph B. Thomas* (D. C.) 81 Fed. 578; *Donnelly v. Ft. Dodge Portland Cement Corporation* (Iowa) 148 N. W. 982; *Clark v. Public Service Electric Co.*, 86 N. J. Law 144, 91 Atl. 83; *Helena Gas Co. v. Rogers*, 104 Ark. 59, 147 S. W. 473; *City of Louisville v. Bridwell*, 150 Ky. 589, 150 S. W. 672; *Thoresen v. St. Paul & Tacoma Lumber Co.*, 73 Wash. 99, 131 Pac. 645, 132 Pac. 860; *Freeman v. Missouri & K. Telephone Co.*, 160 Mo. App. 271, 142 S. W. 733; *Schermerhorn v. New York Central & H. R. Co.*, 33 App. Div. 17, 53 N. Y. Supp. 279; *Burk v. Creamery Package Mfg. Co.*, 126 Iowa, 730, 102 N. W. 793, 106 Am. St. Rep. 377; *Siegel, Cooper & Co. v. Trcka*, 218 Ill. 559, 75 N. E. 1053, 2 L. R. A. (N. S.) 647, 109 Am. St. Rep. 302; *Commonwealth Electric Co. v. Rose*, 214 Ill. 545, 73 N. E. 780. Also see 1 Shearman & Redfield on the Law of Negligence (6th Ed.) sec. 39, p. 76.

For cases, though not involving personal injuries, that are in point in principle and by analogy of reasoning, see *Chicago, Rock Island & Pacific Ry. Co. v. McKone*, 36 Okla. 41, 127 Pac. 488, 42 L. R. A. (N. S.) 709; *St. Louis & San Francisco R. Co. v. Dreyfus*, 42 Okla. 401, 141 Pac. 773, L. R. A. 1915D, 547.

Among the cases not already cited showing that, where a personal injury has been caused in any substantial part by actionable negligence, as well as where so caused in whole, the right of recovery is not defeated by the fact that some other physical condition for which the negligent party is not responsible superinduced or enhanced the injury, and that such other physical condition affects only the amount of damages recoverable, are the following: *Webber v. Old Colony Street Ry. Co.*, 210 Mass. 432, 97 N. E. 74; *Standard Oil Co. v. Bowker*, 141 Ind. 12, 40 N. E. 128; *Louisville & N. R. Co. v. Northington*, 91 Tenn. (7 Pickle) 56, 17 S. W. 880, 16 L. R. A. 268; *Miehlke, Respondent, v. Nassau Electric Ry. Co.*, 129 App. Div. 438, 114 N. Y. Supp. 90; *Waterman v. Chicago & Alton R. Co.*, 82 Wis. 613, 52 N. W. 247, 1136; *Herndon, Respondent, v. City of Springfield*, 137 Mo. App. 513, 119 S. W. 467; *Hope v. Troy & Lansingburg R. Co.*, 40 Hun, 638; *Owens v. K. C., St. J. & C. B. R. Co.*, 95 Mo. 169, 8 S. W. 350, 6 Am. St. Rep. 39.

The only errors presented for our consideration involve the single inquiry as to whether the verdict is sustained by sufficient evidence.

It is well settled that, if there is any evidence, including all premissible inferences therefrom, reasonably tending to support the verdict, the same must be accepted as true, in reviewing a law case in the Supreme Court, and is sufficient. *Johnson v. Johnson,* 43 Okla. 582, 143 Pac. 670; *McKemie v. Albright*, 44 Okla. 405, 144 Pac. 1027; *City of Guthrie v. Snyder*, 43 Okla. 334, 143 Pac. 8; *Cummins v. Bridges*, 42 Okla. 200, 140 Pac. 1146; *McConnell v. Watkins*, 42 Okla. 214, 140 Pac. 1167; *Great Western Coal & Coke Co. v. Serbantas*, 50 Okla. 118, 150 Pac. 1042.

Among the cases either defining "tend" or "tending," or otherwise throwing light upon the meaning of the term "reasonably tending to prove," as used in ascertaining if there is any evidence of a fact in issue justifying or requiring its submission to the jury, are the following: *Vigel v. Naylor*, 24 How. 208; 16 L. Ed. 646; *Shaw v. New Year Gold Mines Co.*, 31 Mont. 138, 77 Pac. 515; *White v. State*, 153 Ind. 689, 54 N. E. 763; *Nash v. State*, 61 Tex. Cr. R. 259, 134 S. W. 709; *Hogue v. State*, 93 Ark. 316, 124 S. W. 783, 130 S. W. 167.

In the brief for the defendant its actionable negligence, or, in other words, its breach of duty to the plaintiff, is admitted as follows:

"It may be admitted for the purpose of the argument * * * that the colored waiting room of the defendant at Greenfield was not properly warmed, and was used on the day in question to a large extent for the storage of Irish potatoes; * * * that the defendant, by reason of a custom or usage, as well as under the laws of the state, was under the duty to provide for a reasonable length of time before the arrival of its trains a waiting room for colored passengers, well warmed and comfortable in other respects; and that the plaintiff presented himself at the defendant's station, for the purpose of taking passage on its train, within a reasonable time prior to its scheduled arrival; or, in other words, it may be admitted that the defendant was under a duty to the plaintiff to provide a waiting room well warmed and comfortable, and that it breached that duty."

After making this admission the defendant proceeds to argue in its brief: (1) That there is no evidence reasonably tending to prove that defendant's negligence was the proximate cause of the plaintiff's injuries, there being no medical testimony to that effect; and (2) that,

even if plaintiff's injuries did result from exposure to cold weather, there is no evidence reasonably tending to prove that it resulted from defendant's negligence, and not from his prior exposure. The true answer to these propositions seems obvious and conclusive against the defendant.

In examining this question. we may as well say at the outset that, in view of plaintiff's prior good health, of his immediately following sufferings and afflictions, and of the absence of any evidence that there was any cause, other than exposure to the extremely cold weather under consideration, of his said subsequent sufferings and afflictions, which came as if the natural sequence of such exposure, we deem it too clear to justify discussion that there is sufficient evidence to warrant the inference that such sufferings and afflictions were proximately caused by such exposure.

The undisputed evidence not only shows defendant's breach of duty to plaintiff, as admitted in the above quotation from the former's brief, but it also shows that, as the proximate result of defendant's neglect to perform its duty to plaintiff in this regard, the latter, for about 30 minutes, suffered severely from cold at a time when his naturally diminished powers of resistance, or, in other words, his ability and disposition to produce body heat within himself, was much below normal, and far from equal to the excessive demands of the occasion. The defendant must have known that passengers coming any considerable distance in such extremely cold weather to its station, with consequent diminished supply of body fuel and decreased capacity to produce body heat, would be in great need of the aid of external heat to prevent

physical suffering while waiting for its train in the more
or less relaxed state that ordinarily follows such jour-
neys; and it is at least a reasonable, and therefore per-
missible, inference that a duly comfortable waiting room
would have prevented much, if not practically all, of
plaintiff's suffering from cold while waiting about 30
minutes at defendant's station. It thus appears that the
evidence as to defendant's breach of duty and plaintiff's
consequent suffering for 30 minutes next after arriving
at the station is sufficient to sustain the verdict and
judgment without reference to his subsequent afflictions.
However, as the instructions to the jury indicated said
subsequent afflictions as the principal injury for which
plaintiff demanded damages, and the defendant's argu-
ment in its brief assumes that the damages allowed were
predicated alone upon the same, we feel that we should
also discuss the question as to whether the evidence rea-
sonably tends to prove the defendant's said negligence
proximately caused the same or any substantial part
thereof.

Although expert opinion testimony may be forensi-
cally necessary to insure a correct inference by a jury
from the proven basic facts upon which such testimony
and such inference are alike based, such testimony is
not binding upon the jury, but is merely advisory and in-
tended to aid it in sound reasoning and correct conclu-
sions from such proven basic facts; and, in cases where
such testimony is admissible, it would seem that such
testimony, strictly speaking, can never be regarded as
legally necessary to sustain a jury's inference from such
proven basic facts, though the court may not know such
inference to be correct, unless the court is convinced and
can say such inference is unwarranted (3 Modern Law

of Evidence, by Chamberlayne, sec. 2377, p. 3229; 2 Jones, Commentaries on Evidence, secs. 367, 392; *Congress & E. Spring Co. v. Edgar,* 99 U. S. 645, 25 L. Ed. 487; *Union Ins. Co. v. Smith,* 124 U. S. 405, 8 Sup. Ct. 534, 31 L. Ed. 497; *Head v. Hargrave,* 105 U. S. 45, 26 L. Ed. 1028; *Colley v. Sapp,* 44 Okla. 16, 142 Pac. 989, 1193); but in the instant case the defendant produced such expert testimony from a physician who supplied much that might be thought lacking in the evidence adduced by the plaintiff as to the proximate cause of his subsequent afflictions, especially as to the proximate cause of his being "puny" and "stove up" at the time of the trial.

The defendant erroneously contends, upon the inapplicable authority of *Solts v. Southwestern Cotton Oil Co.,* 28 Okla. 706, 115 Pac. 776, quoting with approval *Patton v. Texas & Pacific Ry. Co.,* 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361, and other authorities to the same effect, that the testimony leaves the matter uncertain, in that either plaintiff's drive to the station in an open vehicle or his 30 minutes' wait thereat without the aid of external heat may have brought about his subsequent afflictions, only for the latter of which causes the defendant is responsible, so that the jury is left to guess between these two causes, and find that the negligence of the defendant is the real cause, when there is no satisfactory foundation in the testimony for that conclusion, as if said causes were inconsistent, and the existence of one negatived the existence of the other. This contention would be sound and these authorities applicable if only one of these two causes could have produced such subsequent affliction, if these causes could not have operated together to produce the same, and, further, if the evi-

dence furnished no criterion by which the jury might find that defendant's negligence was the real cause of the whole or some substantial part of such subsequent afflictions; but the contention is not sound and the authorities are not in point here, where both causes together or the defendant's negligence alone may have produced these afflictions, and we are unable to say that the evidence does not afford a basis from which the jury may reasonably have inferred that but for said 30 minutes' wait in the cold the plaintiff would not have suffered any or some substantial part of such afflictions.

It is at least a matter of common positive knowledge that one so thinly clad that his sufferings from cold would be intense and of serious after effect, if not fatal, in an hour and a half of exposure to extremely cold weather, may expose himself to the same weather for a moment or somewhat longer without experiencing any considerable discomfort; and it would seem that, in the light of common knowledge that the need of the aid of external heat increases with each moment of such exposure when the demand for body heat exceeds its ability to produce a sufficiency from within, and that, if a person had such aid before passing the determinate rallying point, no subsequent affliction would result therefrom, this court cannot say that an inference that plaintiff's subsequent afflictions were due in whole or in some substantial part to his exposure at the defendant's station is unwarranted. Indeed, such an inference would seem to rest upon practically as solid ground as the inference that plaintiff's suffering at the station for 30 minutes was due in whole or in some substantial part to his exposure at the time, rather than to his prior exposure, which latter must have contributed to an extent difficult

to determine to his suffering during said 30 minutes, and, however improbable, it is not impossible that before his arrival at the station he had so far passed a determinate rallying point that the heat of a reasonably comfortable waiting room would have relieved his conscious suffering but little.

As to whether and to what extent defendant's breach of duty to the plaintiff caused plaintiff's subsequent affliction, as well to whether and to what extent such breach of duty caused plaintiff's suffering at the station, was a question for the jury, which its verdict finally determined. See all the cases hereinbefore cited.

If, as must be admitted, it is impossible to find in the record in the instant case evidence indicating the precise lines between the injury suffered after plaintiff's arrival at the station and defendant's breach of duty as the proximate result of his prior exposure only and the injury suffered only as the proximate result of such breach of duty, and difficult to find any satisfactory measure by which to determine the extent of the injury and consequent amount of damages properly chargeable to the defendant, such considerations apparently have not in the past history of personal injury cases prevented the submission of such questions to the jury nor affected the conclusiveness of its verdict. Similar difficulties often present themselves in determining the amount of damages (*St. L. & S. F. R. Co. v. Long,* 41 Okla. 177, 137 Pac. 1156, Ann. Cas. 1915C, 432, with notes), and indeed equally difficult tasks have been by legislation specifically imposed upon juries, as, e. g., where in giving damages for injuries caused by the combined negligence of a plaintiff and a defendant the jury is required to

return a verdict for only such part of the whole amount as is apportionable to the negligence of the defendant.

In the case of *St. L., I. M. & S. Ry. Co. v. Hook, supra,* an unwarmed depot case, it was held:

"Where a passenger was compelled to wait several hours in an unheated waiting room at a passenger depot, and contracted a cold there which developed into a case of pneumonia within 36 hours, and there was evidence tending to show that the pneumonia resulted from the exposure, the jury were justified in finding that the condition of the waiting room was the cause of the disease, and in holding the railroad company liable."

In that case the passenger, a child, had been exposed to the cold in going 300 yards to the station, and if, as is said, pneumonia is infectious, and in a measure contagious, the child may have contracted the same from another child in the same family who had just recovered from that disease.

In *Texas Midland R. R. Co. v. Little, supra,* an unwarmed depot case, it was held:

"In a husband's action for the suffering of his wife, occasioned by the unwarmed condition of defendant railroad company's depot, the fact that the wife was cold when she entered the depot would not affect the right to recover for suffering for continued or increased cold thereafter, occasioned by its unwarmed condition."

In the case of *Chicago, R. I. & G. Ry. Co. v. Groner, supra,* an unwarmed depot case, it was held:

"Where the wife of the plaintiff had consumption at the time of her exposure to cold through the negligence of the defendant, and such negligence reasonably and naturally aggravated the disease and hastened her death, the defendant would be liable if such death was a prox-

imate result of said negligence. In such case the defendant's negligence would be a contributing cause of the death, and the negligence could not be excused on the ground that death would have occurred later. This fact goes only to the amount of damages."

In *Missouri, K. & T. Ry. Co. v. McCutcheon, supra,* an unwarmed depot case, it was held:

"Where, in an action for injuries resulting from exposure to the inclement weather, plaintiff alleged and the evidence showed that her ovaries had become affected, it was permissible for her to testify to the effect that such diseased condition would naturally have upon other organs of the body, though there was no allegation as to the effect upon such other organs."

We have found no case in which the plaintiff, without qualifying as an expert, has been denied the right to testify to subsequent illness as a result of exposure to inclement weather; and in the case last above quoted, as will be seen from the quotation, a witness was allowed to testify to the natural effect of a bodily condition, while in the case of *International & G. N. R. R. Co. v. Doolan, supra,* the plaintiff testified that she "took cold from the exposure," etc.

In the case of *Standard Oil Co. v. Bowker, supra,* it was held:

"That plaintiff disobeyed his physician's instructions, in taking improper exercise, which contributed to his ailment, will not prevent a recovery, but only goes to the amount of damages."

In the case of *Louisville & N. R. Co. v. Northington, supra,* it was held:

"In an action for negligent killing, where galloping consumption was claimed by defendant to have been the cause of the death, which occurred about a month after

the accident, the court having instructed that, 'if the injury was slight and of such a character as to simply aggravate the disease, and he died of the disease, and not of the injury, then plaintiff cannot recover,' there was no error in adding, 'but, if the death was hastened or occurred sooner by reason of the injury, * * * then the injury was the cause of the death.' "

In *Miehlke v. Nassau Electric Railroad Co., supra*, it was held:

"A passenger injured by the negligence of a railroad company need not have been physically sound in order to recover for injury actually sustained."

The cases hereinbefore cited as defining "tend" and "tending" and as otherwise throwing light upon the question also support the view that in the instant case the evidence reasonably tends to support the verdict.

The jurors, in the light of common experience and knowledge, may have inferred either that plaintiff had not passed a determinate and easy rally.ng point when he reached the station, or, if so, that he had not so far passed the same but that his subsequent sufferings and afflictions would have been substantially less if a duly comfortable waiting room had been provided for him; and, if defendant's breach of duty proximately caused either the whole or any substantial part of plaintiff's sufferings while at the station, or the whole or any substantial part of his subsequent sufferings and afflictions, it was liable for the damages given against it in this action.

For the reasons stated, the judgment of the trial court should be affirmed.

COLLIER, C., not participating.

By the Court: It is so ordered.