## GYPSY OIL CO. v. KARNS.

No. 12579—Opinion Filed Nov. 25, 1924.

Rehearing Denied May 26, 1925.

**1. Evidence — Opinion as to Value—Competency of Owner.**

The owner of an interest in, and who operated, an oil and gas mining lease, producing oil from several wells thereon for several years, who claimed to be familiar with values of such property in the community, was competent as a witness to estimate its value.

**2. Same—Opinion of Other Person.**

Another person, claiming acquaintance with the value of such property and who was familiar with such lease, was also competent to estimate its value.

**3. Estoppel—Accepting Benefits Under Nonassignable Contract.**

One who conveyed to another a working interest in a nonassignable mining lease was estopped, under section 5247, Comp. Stat. 1921, to deny the validity thereof, where he accepted the benefits of such lease for several years during which the impediment to assignability was removed.

**4. Contracts — Construed as Assignment and Not One of Employment.**

Record examined, and held, the contract between the parties conveyed a working interest in the lease and was not one of employment.

(Syllabus by Estes, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Nowata County: C. W. Mason, Judge.

Ed Karns, Jr., had judgment against Gypsy Oil Company, a corporation. The latter appealed. Affirmed.

James B. Diggs, William C. Liedtke, and Redmond S. Cole, for plaintiff in error.

J. Wood Glass and Floyd A. Calvert, for defendant in error.

Opinion by ESTES, C. Parties will be referred to as they appeared in the trial court, inverse to their order here. On July 14, 1915, Karns (plaintiff) & Harrington, addressed the following letter to defendant:

"We have not heard from you people relative to the contract with you for pumping the Taylor lease near Lenapah.

"We have run one tank and expect to run a 250 bbl. tank the next few days.

"Wish you would kindly arrange to make the contract out and forward it to us to be signed.

"A contract similar to the one we have with you on the Mark Smith lease at Delaware would suit us."

Defendant replied:

"I have your letter of July 14th in regard to contract to cover your operations of the Taylor lease near Lenapah.

"The contract has not been sent you for the reason that this is a departmental lease, for which reason it is not advisable to execute a contract, but it is understood that you may continue to operate the lease indefinitely, so long as same is taken care of in the usual manner and operations conducted in proper shape, in accordance with the custom prevailing in that field, the arrangement being that we are to receive 35 per cent. of the net oil, after the royalty is paid, and you to receive 65 per cent. of the net oil. You can retain this letter for your records, showing the agreement.

"I herewith enclose you check for your proportion of the tank of oil you refer to, and hereafter you will receive such check in like proportion promptly at the end of each month for any oil that may be run during the month. There is now a division order on file with the department at Muskogee, running all of the net oil to us, for which reason it will be necessary to continue handling in that manner, we paying you for your part of the oil, and you, as it were, operating the lease for us.

"Trusting that you will understand this and the reasons for it, and that same will be satisfactory to you, I am".

Thereafter plaintiff took over the interest of his partner, Harrington. Defendant was the owner of an oil and gas mining leasehold estate in 50 acres in Nowata county, referred to in said correspondence as the said Taylor lease. There were five small producing wells upon the land. The equipment of the wells belonged to defendant. Pursuant to said correspondence, supplemented by certain conversations between the parties, plaintiff operated the wells on said lease from 1915 to April 10, 1919, receiving at all times, 65 per cent. of the income of said wells after deducting the one-eighth royalty to the owner. On said date defendant dispossessed plaintiff, took charge of the said lease, wells, and equipment, and thereafter denied plaintiff the right to operate same, and to receive any share of the income. Upon suit by plaintiff, judgment was against defendant for $1,500, for breach of contract. The assignments argued are under two propositions, that the court erred (1) in permitting answers to certain hypothetical questions not based on facts shown by the record and included in such questions, and (2) in not holding that the contract was one of employment for an indefinite

time, and therefore subject to be terminated at any time without notice by either party.

1, 2. The first proposition has to do with proof of the value of the lease, that is, plaintiff's interest therein, assuming that he had an interest rather than an employment to operate. Assuming, without deciding, that the hypothetical questions on value were incompetent as not based on sufficient facts of the record, expert testimony is not binding, but is only advisory to the jury. It is never legally necessary to sustaining a verdict involving the question. Chicago, R. I. & P. Ry. Co. v. Gilmore, 52 Okla. 296, 152 Pac. 1096. Plaintiff testified that he took the lease over and began operating in 1915 when the wells were producing about two and a half barrels per day, worth 45 cents per barrel; that he operated the same until dispossessed in 1919, when the wells produced about four barrels per day, worth $2.25 per barrel; that he had had experience in buying and selling oil properties at that time in the same field; that the fair market value of the production in April, 1919, was between $2,500 and $3,000 per barrel, based on the daily production. It is quite generally held that ordinarily the owner of real estate is assumed to possess sufficient acquaintance with it to estimate the value of the property, although his knowledge may not be sufficient to qualify him to testify if he were not the owner. 22 C. J. 586. Of course, ownership alone does not render the owner of real estate competent as a witness to its value, if he is not familiar with the location, quality, or value. Port Townsend So. R. Co. v. Nolan et al. (Wash.) 93 Pac. 528. A property owner who occupies same, and is familiar with the purposes for which it may be used, and with values in the community, may testify as to its value. City of Sedro-Woolley v. Willard et al. (Wash.) 129 Pac. 372. A fortiori, this is true as to the value of chattels. Midland Valley R. Co. v. Larson, 41 Okla. 360, 139 Pac. 173. Plaintiff's witness, Crenshaw, testified that he had been in the oil producing business in and around this field for about eight years; that he knew the identical lease in controversy; that he owned an adjoining lease, which he sold in 1918; that in September, 1918, he was on this lease for the purpose of purchasing same, and inspected the wells, testing some of the wells and comparing them with his own; that he had sold oil production in that county and dealt in the oil business generally; that such value in 1919 was about $2,000 per barrel; that the interest of plaintiff, based on said contract,

was about 50 per cent. of that value. On cross-examination, the witness admitted that to arrive at the exact value of plaintiff's interest would require consideration of the operating expenses and perhaps other matters. The market value of an interest in real estate may be estimated by one acquainted with that class of property, who has seen the land and had adequate opportunities for observation, as by making sales or purchases, and is possessed of the requisite ability to make a reasonable inference. 22 C. J. 587; Garnett v. Storm, 64 Okla. 137, 166 Pac. 401; Fire Ass'n of Philadelphia v. Farmers' Gin Co., 39 Okla. 162, 134 Pac. 443. Thus, it is seen that the testimony of plaintiff and Crenshaw was competent, its value, of course, being for the jury. The value estimated by the other witnesses, even though based on insufficient hypotheses, was not greater than aforesaid. The verdict was much less than might have been returned. There was ample evidence as to value reasonably tending to support the verdict. Under the well-known rule, same cannot here, on that ground, be disturbed.

3, 4. The owner of the land was a Cherokee citizen. The original lease was departmental and made to third parties who assigned same to defendant, both lease and assignment having been duly approved. Intervening the date of said correspondence and the dispossession of plaintiff. restrictions of lessor were duly removed. The court instructed the jury, in substance, that defendant was estopped to deny the validity of the contract herein as a sublease or assignment. Section 5247, Comp. Stat. 1921, provides, inter alia, that any corporation having knowingly received and accepted the benefits or any part thereof of any conveyance or contract relating to real estate, shall be concluded thereby and estopped to deny the validity of same, or the power or authority to make and execute the same, except on the ground of fraud, etc. As stated in Avery et al. v. Van Voorhis et al., 42 Okla. 232, 140 Pac. 615, the rule of estoppel under this statute applies to varying conditions and states of fact. Defendant was clearly estopped, under said statute, by receiving, for several years, the seven-eighths of the income of said wells, retaining its 85 per cent. thereof, and paying plaintiff the remainder. The trial court did not err in so holding. The court submitted to the jury the sole question whether plaintiff conducted the operations on the lease properly and in accordance with the custom prevailing in that field. It is not urged here that the verdict was not supported by sufficient

evidence in this behalf. It is erroneously contended that because the contract between the parties was not duly approved, the same was one of employment—not conveying an interest. A careful reading of said letter from defendant to plaintiff discloses that the same was intended to be an assignment of the lease. Therein it appears the reason an assignment contract was not made was because the lease was departmental. That plaintiff should operate same properly is implied in every assignment. Payment in percentage of production was not inconsistent with an assignment. The letter evinced an intention to grant a working interest in the lease. The check inclosed with the letter and referred to was "for your portion of the tank of oil" already produced—not for services as an employe in operating the lease. Plaintiff was assured that he would "receive such check in like proportion promptly at the end of each month for any oil that may have been run during the month." It was explained also that all of the net oil had to be run to defendant "we paying you for your part of the oil". Taken together this instrument can only mean that defendant intended to convey to plaintiff an interest in the lease, formal assignment not being made for the reason stated. There is evidence in the record corroborating this construction of the letter. Since said contract was not one of employment, the second proposition of defendant is without merit.

It is recommended that the judgment be affirmed.

By the Court: It is so ordered.